ISABELLE ORD (SBN 198224)
*isabelle.ord@us.dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

OLIVER M. KIEFER (SBN 332830)
*oliver.kiefer@us.dlapiper.com*
MATTHEW C. DANAHER (SBN 351055)
*matt.danaher@us.dlapiper.com*
ASHLEY BARTON (SBN 335673)
*ashley.barton@us.dlapiper.com*
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

*Attorneys for Defendant*
***Hilton Worldwide Holdings Inc.***

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

SUELLEN CRANO, KELLY COONEY, individually and on behalf of other similarly situated individuals,

Plaintiffs,

vs.

HILTON WORLDWIDE HOLDINGS INC., and DOES 1-10.

Defendants.

Case No. 2:24-cv-09809-SVW-AJR

**DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Judge: Hon. Stephen V. Wilson
Date: March 17, 2025
Time: 1:30 p.m.
Crtrm: 10A

Filed: January 10, 2025

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 17, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Stephen J. Wilson, United States District Judge, Central District of California, located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012, Defendant Hilton Worldwide Holdings Inc. ("Hilton Holdings") will, and hereby does, move for an order dismissing the Amended Class Action Complaint ("FAC") of Plaintiffs Suellen Crano and Kelly Cooney's ("Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted, or in the alternative, transferring the case to the Eastern District of Virginia under 28 U.S.C. § 1404(a). The Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice, the Declarations of Matthew C. Danaher, Fjorela Shati, and Bradley Anderson, all pleadings and papers on file in this matter, and upon such argument and other matters as may be presented to the Court at the time of the hearing or otherwise.

Hilton Holdings moves to dismiss Plaintiffs' FAC under Federal Rule of Civil Procedure 12(b)(6) on the grounds that:

(1) Plaintiffs consented to the conduct alleged in the FAC by agreeing to the Hilton Holdings' Site Usage Agreement, Hilton Honors Terms and Conditions, Hilton's Global Privacy Statement, Meta's Terms of Use, and Meta's Cookies Policy, which disclosed the information sharing at issue;

(2) Plaintiffs fail to plead a violation of the California Invasion of Privacy Act, California Penal Code §§ 631(a) and 632 ("CIPA"), because (i) Hilton Holdings was an intended party of any "communications," (ii) Plaintiffs fail to allege Hilton Holdings acted with the requisite intent, (iii) Plaintiffs cannot establish Hilton Holdings intended to aid and abet unlawful conduct by Meta; (iv) Plaintiffs fail to

/////

allege the interception of "contents" of a communication, and (v) Plaintiffs fail to allege a "confidential" communication required to state an eavesdropping claim;

(3) Plaintiffs' equitable Unfair Competition Law ("UCL") and unjust enrichment claims are barred because Plaintiffs have an adequate remedy at law;

(4) Plaintiffs fail to allege a loss of money or property, and therefore lack statutory standing under the UCL; and

(7) Plaintiffs' unjust enrichment claim is barred by Plaintiffs' express contracts with Meta and Hilton Holdings covering the issue in dispute.

In the alternative, Hilton Holdings moves to transfer this action to the Eastern District of Virgina pursuant to 28 U.S.C. § 1404(a) because Plaintiffs agreed to resolve all disputes with Hilton Holdings in that venue under the exclusive venue provisions of the Site Agreement and Hilton Honors Terms.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 17, 2025.

Dated: January 24, 2025

**DLA PIPER LLP (US)**

By: */s/ Isabelle Ord*
ISABELLE ORD
OLIVER M. KIEFER
MATTHEW C. DANAHER
ASHLEY BARTON

*Attorneys for Defendant*
HILTON WORLDWIDE HOLDINGS INC.

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. The Hilton Terms and Privacy Policies Applicable to the Website. ........ 2

B. Facebook and the Meta Pixel. ........ 3

C. Plaintiffs' Hilton Honors Memberships and Website Bookings. ........ 4

D. Plaintiffs' Consent to Resolve Disputes in the Eastern District of Virginia. ........ 5

III. LEGAL STANDARD ........ 5

A. Motion to Dismiss. ........ 5

B. Motion to Transfer Venue. ........ 6

IV. PLAINTIFFS' CIPA CLAIMS FAIL BECAUSE PLAINTIFFS CONSENTED TO THE ALLEGED CONDUCT ........ 7

V. HILTON HOLDINGS IS NOT LIABLE UNDER ANY PART OF CIPA, SECTION 631(A) ........ 10

A. There is No Direct Violation of Section 631(a) under Clauses One to Three ........ 10

B. There is No Section 631(a) Violation Through Aiding and Abetting Unlawful Conduct by Meta under Clause Four. ........ 11

C. Plaintiffs Fail to Allege Interception of "Contents." ........ 13

VI. PLAINTIFFS FAIL TO ALLEGE A CONFIDENTIAL COMMUNICATION UNDER SECTION 632 ........ 14

VII. PLAINTIFFS' EQUITABLE CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW ........ 16

VIII. PLAINTIFFS LACK STATUTORY STANDING UNDER THE UCL ........ 17

IX. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE THERE ARE CONTRACTS COVERING THE ALLEGED CONDUCT ........ 18

X. THE COURT SHOULD TRANSFER THIS CASE TO THE EASTERN DISTRICT OF VIRGINIA ........ 19

XI. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Shutterfly, Inc.*,
No. 20-CV-02448, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) .................... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 5, 6

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas ("Atl. Marine")*
571 U.S. 49 (2013) .................... 7, 19

*B.K. v. Desert Care Network.*,
No. 2:23-CV-05021, 2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) .................... 12

*Biovill Co. v. Oh*,
*No.*, No. 2:23-CV-07920, 2024 WL 3001472 (C.D. Cal. Apr. 25, 2024) (Wilson, J.) .................... 18

*In re Capital One 360 Sav. Acct. Int. Rate Litig.*,
2024 WL 4753821 (E.D. Va. Nov. 12, 2024) .................... 15, 17

*Cole v. Quest Diagnostics, Inc.*,
No. 2:23-CV-20647, 2025 WL 88703 (D.N.J. Jan. 14, 2025) .................... 11

*Colonna's Shipyard, Inc. v. Coastal Cement Corp.*,
2023 WL 3321734 (E.D. Va. May 9, 2023) .................... 18

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .................... 10

*Dotson v. Arizona Beverages USA LLC*,
No. 2:22-CV-00923, 2022 WL 17886015 (C.D. Cal. June 27, 2022) (Wilson, J.) .................... 17

*Earthmade Prods., LLC v. Botanicals Internacional S.A. de C.V.*,
No. 8:20-CV-02445, 2022 WL 19405239 (C.D. Cal. Feb. 2, 2022) .................... 7, 19

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-CV-0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .................... 13

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ... 8

*Gerstle v. Am. Honda Motor Co., Inc.*,
No. 16-CV-04384, 2017 WL 2797810 (N.D. Cal. June 28, 2017) ... 18

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ... 11

*Gordon v. City of Moreno Valley*,
687 F. Supp. 2d 930 (C.D. Cal. 2009) ... 6

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 14

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ... 17

*Hammerling v. Google LLC*,
No. 21-CV-09004, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ... 6

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ... 19

*J.B. v. Aimbridge Hosp., LLC*,
No. 18-CV-8014, 2019 WL 11505267 (S.D. Fla. Apr. 17, 2019) ... 20, 21

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ... 7

*Kahn v. FCA US LLC*,
No. 2:19-CV-00127, 2019 WL 3955386 (C.D. Cal. Aug. 2, 2019)
(Wilson, J.) ... 18, 19

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ... 14

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ... 6

*Kidstar v. Facebook, Inc.*,
No. 2:18-CV-13558, 2020 WL 4382279 (D.N.J. July 31, 2020) ... 9

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ... 3

*LaCross v. Knight Transp., Inc.*,
95 F. Supp. 3d 1199 (C.D. Cal. 2015)....................19

*Landec Corp. v. Certain Underwriters at Lloyds, London*,
No. 21-CV-214274, 2021 WL 7540632 (C.D. Cal. Dec. 28, 2021)....................20

*LMP Holdings, LLC v. PLY Enters., LLC*,
2012 WL 4344302 (E.D. Va. Sep. 21, 2012)....................16

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022)....................13

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)....................19, 20

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988)....................7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................10

*Medoff v. Minka Lighting, LLC*,
No. 2:22-CV-08885, 2023 WL 4291973 (C.D. Cal. May 8, 2023) (Wilson, J.)....................17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................12

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)....................6

*Original Talk Radio Network, Inc. v. Dial Glob., Inc.*,
No. 12-CV-127370, 2013 WL 12140478 (C.D. Cal. May 17, 2013)....................7

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972)....................11

*People v. Stipo*,
195 Cal. App. 4th 664 (2011)....................14

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020)....................20

*R.C. v. Walgreen Co.*,
No. 23-CV-1933, 2024 WL 2263395 (C.D. Cal. May 9, 2024)....................17

*Radical Invs. Ltd. v. Good Vibrations Ent. LLC*, No. 2:22-CV-02752, 2023 WL 2372387 (C.D. Cal. Feb. 10, 2023) (Wilson, J.) ..... 17

*Rodriguez v. Google LLC*, No. 20-CV-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ..... 14

*Sanchez v. Navy Fed. Credit Union*, No. 23-CV-23285, 2023 WL 6370235 (C.D. Cal. Aug. 14, 2023) ..... 6

*Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*, No. 2:22-CV-09030, 2023 WL 5506021 (C.D. Cal. 2023) (Wilson, J.) ..... 17

*Shin v. Sanyo Foods Corp. of Am.*, No. 2:23-CV-10485, 2024 WL 4467603 (C.D. Cal. Aug. 13, 2024) (Wilson, J.) ..... 18

*Silver v. Stripe, Inc.*, No. 4:20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ..... 12

*Skelton v. Care.com, Inc.*, No. 3:20-CV-2086, 2021 WL 5862447 (S.D. Cal. Aug. 17, 2021) ..... 3

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ..... 9, 13

*Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) ..... 12

*Smith v. YETI Coolers, LLC*, No. 24-CV-01703, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ..... 13

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ..... 2, 16, 17

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ..... 11

*Tavernetti v. Superior Court*, 22 Cal. 3d 187 (1978) ..... 10, 11

*Urista v. Wells Fargo & Co.*, No. 20-CV-01689, 2022 WL 104278 (S.D. Cal. Jan. 11, 2022) ..... 7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 13, 14

**Statutes**

28 U.S.C. § 1404(a) .......... *passim*

Cal. Bus. & Prof. Code § 17204 .......... 17

Cal. Civ. Code § 53.5 .......... 15, 16

Cal. Civ. Code § 53.5(i) .......... 16

Cal. Civ. Code § 53.5(c) .......... 15

Cal. Penal Code § 631 .......... 7

Cal. Penal Code § 631(a) .......... *passim*

Cal. Penal Code § 632 .......... *passim*

Cal. Penal Code § 632(a) .......... 7, 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......... 1, 5

L.R. 7-3 .......... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Amended Class Action Complaint ("FAC") must be dismissed because Plaintiffs Suellen Crano and Kelly Cooney ("Plaintiffs") still fail to plead any valid claim for relief against Defendant Hilton Worldwide Holdings Inc. ("Hilton Holdings"). In the alternative, this action must be transferred to the Eastern District of Virginia under the exclusive venue provision of the Hilton Holdings Site Usage Agreement ("Site Agreement") governing Plaintiffs' use of the www.hilton.com website (the "Website") and the Hilton Honors Terms and Conditions ("Hilton Honors Terms") Plaintiffs accepted as Hilton Honors loyalty members.

Plaintiffs allege that they are Facebook users, and their claims arise from visits to the Website where they allegedly were wiretapped or eavesdropped upon by Hilton Holdings through the use of the Meta Pixel, which allegedly shared their information with Facebook without their consent. But, as Website and Facebook Users and Hilton Honors members, Plaintiffs *explicitly consented* to this conduct through the Website's Site Agreement, the Hilton Honors Terms, Hilton's Global Privacy Statement, Meta's Terms of Use ("Meta Terms"), Meta's Cookies Policy, and Meta's Privacy Policy, which required Plaintiffs' agreement to the sharing of the information at issue. Despite a voluntary amendment, nothing about the FAC changes this result.

The Court should dismiss these claims for the same reasons articulated in Hilton Holdings' original Motion to Dismiss.

*First*, Plaintiffs' consent under these agreements obviates their ability to plausibly plead that Meta intercepted Plaintiffs' information "without the consent of all parties" to the communication, as required by CIPA.

*Second*, Plaintiffs' section 631(a) claim independently fails because Plaintiffs allege Hilton Holdings was a party to the communications and therefore Hilton Holdings cannot be directly liable for "wiretapping."

*Third*, Plaintiffs' section 631(a) claim fails even under a derivative theory of

liability because the FAC does not allege Hilton Holdings or Meta intended to commit an unlawful wiretap.

*Fourth*, Plaintiffs' section 631(a) claim independently fails because the FAC does not allege the interception of the "contents" of a communication.

*Fifth*, Plaintiffs' section 632 claim fails because the alleged communications were not "confidential." Internet-based communications are presumptively not confidential, and Plaintiffs consented to their disclosure here.

*Sixth*, Plaintiffs' equitable California Unfair Competition Law ("UCL") and unjust enrichment claims fail because Plaintiffs seek money damages under CIPA and therefore have an adequate legal remedy. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020).

*Seventh*, Plaintiffs lack statutory standing under the UCL because they do not allege a loss of money or property arising from the alleged unfair competition.

*Eighth*, the unjust enrichment claim independently fails due to the parties' express contracts covering the conduct at issue.

In the alternative, this action should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a) to protect the parties' legitimate expectations and further vital interests of the justice system.

## II. FACTUAL BACKGROUND

### A. The Hilton Terms and Privacy Policies Applicable to the Website.

The Website allows users like Plaintiffs to browse for and book stays at Hilton-branded hotels. *See* FAC, ¶¶ 3, 4. When booking through the Website, users agree to the Site Agreement and Hilton's Global Privacy Statement. Request for Judicial Notice ("RJN") Ex. A, at 1; *see also* Ex. C, E. Since 2020, the Website's booking page has affirmatively required users to accept these agreements and policies to make

/////

/////

/////

a hotel booking. RJN Ex. B, at 1-2.[1] Plaintiffs' alleged continued use of the Website and Hilton Honors' memberships confirm Plaintiffs agreed to the changes and updates at all times, and are bound by the Site Agreement, Hilton Honors Terms, and Global Privacy Statement, including agreement to the collection and sharing of the information at issue. FAC, ¶¶ 3, 4; RJN, Exs. E, F, G.

Since at least 2020, the Hilton Global Privacy Statement has disclosed and required users' agreement that Hilton "partner[s] with certain third-party service providers to collect information" and that "[t]hese third parties may use . . . pixels[] and similar technologies" to "set and access Cookies on your computer or other device." RJN, Ex. C, at 46; Ex. D, at 23. Since 2020, the Hilton Honors Terms expressly incorporated the Hilton Global Privacy Statement. RJN, Ex. G at 27, Ex. H, at 28.

Since at least 2020, the Hilton Site Agreement and Hilton Honors Terms also required Website users and Hilton Honors members to bring all claims arising from use of the Website exclusively in the Eastern District of Virginia. Declaration of Fjorela Shati ¶ 10 ("Shati Decl."), RJN, Ex. E, at 14, Ex. F, at 8 (Site Agreement); Declaration of Bradley Anderson ("Anderson Decl."), ¶ 5; RJN, Ex. G, at 2, Ex. H, at 1 (Hilton Honors Terms).

**B. Facebook and the Meta Pixel.**

Meta is Facebook's parent company. FAC, ¶ 2. The Website uses a ubiquitous software tool provided by Meta called the Meta Pixel. *Id.* at ¶ 41. Meta offers the Meta Pixel to website operators to link site users' web activity to their Facebook accounts. *Id.* at ¶¶ 29, 53. When Facebook users visit websites (or mobile

[1] Hilton Holdings submits certain documents that are subject to judicial notice in deciding both the motions to dismiss and to transfer. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Additional documents are submitted solely in support of Hilton Holdings' alternative motion to transfer. *See Skelton v. Care.com, Inc.*, No. 3:20-CV-2086, 2021 WL 5862447, at *2-3, 6 (S.D. Cal. Aug. 17, 2021) (considering exhibits in deciding defendant's motion to transfer venue).

applications) that use the Meta Pixel, their browsers may relay information to Facebook related to the user's visit on those websites. *Id.* at ¶¶ 28, 29.

Through Meta's Cookies Policy, Meta discloses to Facebook users that it provides cookies (like those cookies in the Meta Pixel) to third party websites for advertising and website analytics. RJN, Ex. I, at 6 ("[Meta] may place cookies on your computer or device and receive information stored in cookies when you use or visit . . . Websites and apps provided by other companies that use the Meta Products, including companies that incorporate Meta technologies into their websites."). Meta's Cookies Policy also informs users how to control their information and how Meta uses that information. *Id.* at 12-14.

Based on Facebook users' choices made in connection with the Cookies Policy, the Meta Pixel pairs event data with user information and transmits the information about the users' website visits to Facebook so companies can retarget users on Facebook for advertising. FAC, ¶¶ 51-56.

**C. Plaintiffs' Hilton Honors Memberships and Website Bookings.**

Plaintiffs are Facebook users. FAC, ¶¶ 3, 4. When signing up for Facebook, Plaintiffs "provide[d] their first and last name" to create their Facebook accounts. *Id.* at ¶ 20. Plaintiffs also consented to Meta's Terms, Privacy Policy, and Cookies Policy. FAC, ¶ 82; RJN, Ex. J, at 1. Plaintiffs are also Hilton Honors members. *See id.* at ¶¶ 3, 4.

Plaintiffs allege that during the booking process, Hilton Holdings enabled the Meta Pixel to transmit to Meta Plaintiffs' communications—including communications Plaintiffs describe as "confidential 'guest records'"—comprising the "names and user-specific values contained in Facebook cookies," to Facebook. FAC, ¶¶ 46, 121. The FAC also vaguely alleges the Meta Pixel transmits unidentified "other piece[s] of information identifying Website users as Hilton guests . . . including URLs that disclose that Website users have reserved a room." *Id.* at ¶ 121. Plaintiffs allege that they were harmed because they lost their "right to control the dissemination and use of their personal information." *Id.* at ¶ 137.

### D. Plaintiffs' Consent to Resolve Disputes in the Eastern District of Virginia.

For purposes of the motion to transfer only, Plaintiff Crano has been a Hilton Honors member since 1995, and Plaintiff Cooney has been a Hilton Honors member since 2012. Shati Decl. ¶17. As Hilton Honors members who have booked rooms on the Website and used their "mobile device[s] to access Hilton's application for booking-related services" since 2020, FAC, ¶¶ 3, 4, Plaintiffs agreed to the Site Agreement and Hilton Honors Terms, requiring "all suits will be in the Eastern District of Virginia." Shati Decl., ¶ 10, RJN, Ex. E, at 14, Ex. F, at 8; Anderson Decl., ¶ 5; RJN, Ex. G, at 2, Ex. H, at 1. Links to the Site Agreement and Hilton Honors Terms containing this venue clause have been clearly and conspicuously displayed in bolded text with blue hyperlinks on the Website booking page and on the Hilton Honors application since at least 2020. Shati Decl., ¶¶ 6, 9; Anderson Decl., ¶¶ 10-11; RJN. Ex. N, at 3.

Prior to booking a room through Hilton Honors: Book Hotel iOS application, users are required to check a box agreeing to the Hilton Honors Terms and Global Privacy Statement. Anderson Decl., ¶¶ 10-11, 13; RJN, Ex. N, at 3. Plaintiffs used the application to book rooms as recently as September 2024 (Plaintiff Crano) and November 2024 (Plaintiff Cooney). Shati Decl., ¶ 17. As Hilton Honors members who booked rooms on the Website and the Hilton Honors application since 2020, FAC, ¶¶ 3, 4, Plaintiffs agreed to the Site Agreement and Hilton Honors Terms, requiring "all suits will be in the Eastern District of Virginia." Shati Decl., ¶¶ 10; RJN, Ex. E, at 14, Ex. F, at 8; Anderson Decl., ¶¶ 5, 13; RJN, Ex. G, at 2, Ex. H, at 1.

## III. LEGAL STANDARD

### A. Motion to Dismiss.

Under Rule 12(b)(6), a complaint should be dismissed if it does not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court may discount

"any allegations therein that amount to little more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gordon v. City of Moreno Valley*, 687 F. Supp. 2d 930, 943 (C.D. Cal. 2009) (quoting *Iqbal*, 556 U.S. at 678).

The Court may take judicial notice of documents available on public websites, including user terms and conditions or privacy policies. *See Hammerling v. Google LLC*, No. 21-CV-09004, 2022 WL 17365255, at *4 (N.D. Cal. Dec. 1, 2022); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1001 (N.D. Cal. 2024) (taking judicial notice of Meta's Terms of Service, Cookies Policy, and Business Rules). Through the incorporation by reference doctrine, the Court is also permitted to "consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading'" when evaluating a motion to dismiss. *Sanchez v. Navy Fed. Credit Union*, No. 23-CV-23285, 2023 WL 6370235, at *3 (C.D. Cal. Aug. 14, 2023) (considering exhibits in ruling on motion to dismiss) (citation and alterations omitted). The incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'" *Id.* (*citing Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)). Applying the incorporation by reference doctrine is "appropriate 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim[.]'" *Id.* (*citing Khoja*, 899 F.3d at 1002).

**B. Motion to Transfer Venue.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts within the Ninth Circuit evaluate motions to transfer venue using a two-step inquiry.

/////

First, the court determines whether the matter might have been brought in the district to which transfer is sought. *Original Talk Radio Network, Inc. v. Dial Glob., Inc.*, No. 12-CV-127370, 2013 WL 12140478, at *5 (C.D. Cal. May 17, 2013).

Second, the court considers whether the convenience of the parties, the convenience of witnesses, and the interests of justice support transfer. 28 U.S.C. § 1404(a); *Urista v. Wells Fargo & Co.*, No. 20-CV-01689, 2022 WL 104278, at *2 (S.D. Cal. Jan. 11, 2022).

Where the parties' agreement contains a valid forum-selection clause, it should be "given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas ("Atl. Marine")* 571 U.S. 49, 63 (2013) (internal quotation marks omitted).[2] "The party challenging the forum selection clause bears a 'heavy burden' of establishing the [] grounds for rejecting its enforcement." *Earthmade Prods., LLC v. Botanicals Internacional S.A. de C.V.*, No. 8:20-CV-02445, 2022 WL 19405239, at *4 (C.D. Cal. Feb. 2, 2022) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000)).

## IV. PLAINTIFFS' CIPA CLAIMS FAIL BECAUSE PLAINTIFFS CONSENTED TO THE ALLEGED CONDUCT

Plaintiffs' claims under CIPA sections 631 and 632 fail because Plaintiffs *consented* to the Site Agreement, Hilton Honors Terms, Hilton Global Privacy Statement, Meta Terms, and Meta Privacy and Cookies Policies, all of which require Plaintiffs to agree to the disclosures at issue. Plaintiffs' consent to this information sharing obviates their ability to plausibly allege that Meta unlawfully intercepted their information "without the consent of all parties" to the communication, as required to plead a CIPA violation. Cal. Penal Code § 631(a); Cal. Penal Code § 632(a).

"Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint," and a party may rely on documents incorporated

---

[2] In diversity cases, courts analyze forum selection clauses under federal law. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).

by reference, including the Hilton and Meta terms and privacy policies here, to challenge this element. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015) (dismissing CIPA § 637.6 claim due to plaintiff's "failure to adequately allege lack of consent"). Plaintiffs consented to these disclosures in two ways.

***Consent through Meta:*** First, Plaintiffs allege that they "maintained a Facebook account" "during the relevant period of time." FAC, ¶¶ 3, 4. "[W]hen creating an account, [Facebook] users must provide their first and last name." *Id.* at ¶ 20. At sign up, "a user [also] assents to the Meta Terms of Service." FAC, ¶ 82. The Facebook account sign up page also requires users to agree to Meta's Privacy Policy and Cookies Policy before they can create a Facebook account. RJN, Ex. J, at 1. These policies disclose exactly the types of conduct underpinning Plaintiffs' CIPA claims:

> [B]y using the Meta Products . . . you agree that we can show you personalized ads . . . that businesses and organizations pay us to promote on and off Meta Company Products. We use your personal data. . . to show you personalized ads and sponsored content.

RJN, Ex. M, at 4.

> We use cookies if you have a Facebook or Instagram account, use the Meta Products, . . . or visit other websites and apps that use the Meta Products . . . . Cookies enable Meta to offer the Meta Products to you and to understand the information that we receive about you, including information about your use of other websites and apps, whether or not you are registered or logged in.

RJN, Ex. I, at 1.

> Our business partners may also choose to share information with Meta from cookies set in their own websites' domains, whether or not you have a Facebook or Instagram account or are logged in. . . . They serve the same purposes as cookies set in Meta's own domain, which are to personali[z]e content (including ads), measure ads, produce analytics and provide a safer experience, as set out in this Cookies Policy.

*Id.* at 5.

> We may place cookies on your computer or device and receive information stored in cookies when you use or visit: . . .Websites and apps provided by other companies that use the Meta Products, including

> companies that incorporate Meta technologies into their websites and apps.

*Id.* at 6.

In short, the Meta Terms and Policies inform Facebook users that Meta can collect and track Facebook users' online activity, regardless of whether the user is logged into Facebook. FAC, ¶ 53. By creating and maintaining Facebook accounts, Plaintiffs gave their consent to Meta to receive information provided by businesses like Hilton Holdings, requiring dismissal of the CIPA claims. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017) (dismissing CIPA claim because plaintiffs' consent to Meta's policies disclosing the "precise conduct at issue" "bar[red]" their claims and "[n]o further allegations could allow [them] to bring claims 'arising out of conduct which they consented to'") (citation omitted), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *see also Kidstar v. Facebook, Inc.*, No. 2:18-CV-13558, 2020 WL 4382279, at *3 (D.N.J. July 31, 2020) (finding plaintiffs were on notice of Meta agreements through signing up with the social media platform).

***Consent through Hilton:*** Second, under the Site Agreement, Hilton Honors Terms, and Hilton Global Privacy Statement, Plaintiffs consented to Hilton Holdings' disclosure of Plaintiffs' information to Meta when booking rooms and/or through their Hilton Honors membership. FAC, ¶¶ 3, 4. For example, the Hilton Global Privacy Statement states:

> "We partner with certain third-party service providers to collect information to engage in analytics, auditing, research, and reporting. These third parties may use server logs, web beacons, tags, pixels, and similar technologies, and they may set and access Cookies on your computer or other device."

RJN Ex. C, at 46, Ex. D, at 23.

Plaintiffs allege they are Hilton Honors members who booked rooms through the Website "during the relevant period of time." FAC, ¶¶ 3, 4. Over that time, the Website's booking page has consistently required users to agree to the Site Agreement

and Hilton Global Privacy Statement, including when booking rooms. RJN, Ex. A, at 3, Ex. B, at 2-3. Thus, Plaintiffs gave their consent to sharing information with businesses like Meta, requiring dismissal of the CIPA claims.

## V. HILTON HOLDINGS IS NOT LIABLE UNDER ANY PART OF CIPA, SECTION 631(A)

### A. There is No Direct Violation of Section 631(a) under Clauses One to Three.

Section 631(a) of CIPA prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978). A "fourth basis for liability" exists for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three 631(a) bases for liability. Cal. Penal Code § 631(a); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Plaintiffs fail to plead a violation of any of the four clauses of Section 631(a).

***No Telephone or Wire*****:** The first clause of Section 631(a) narrowly prohibits "unauthorized connection[s] . . . with any telegraph or telephone wire . . . ." *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *7 (W.D. Wash. Dec. 19, 2023) ("[C]ourts have strictly construed the 'telegraph or telephone' component of § 631(a)'s intentional wiretapping clause."). Plaintiffs communicated with Hilton Holdings on the Website "using a Chrome browser on both [their] computer[s] and mobile device[s]." FAC ¶¶ 3, 4. Plaintiffs admit they did not use telephone lines or wires. An "overwhelming weight of authority" limits liability only to wiretapping with a "telegraph or telephone." *Mastel*, 549 F. Supp. 3d at 1135 (holding the first clause is inapplicable to wiretapping via the Internet, including wiretapping on a smartphone's mobile web browser). Therefore, Plaintiffs' claims are outside of narrow scope of the first clause.

***Party to the Communications:*** As an alleged party to the communications, Hilton Holdings cannot be liable under the second clause. FAC, ¶ 1. The second clause of Section 631(a) does not apply because Hilton Holdings is an alleged party to the alleged wiretapped communications. Plaintiffs allege that they accessed "a website that [Hilton Holdings] owns and operates," and "Hilton's application for booking-related services." FAC, ¶¶ 1, 3, 4. But "a party to the communication cannot be liable for recording its own conversations under § 631(a)." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023); *Cole v. Quest Diagnostics, Inc.*, No. 2:23-CV-20647, 2025 WL 88703, at *3 (D.N.J. Jan. 14, 2025) (eavesdropping under CIPA does not occur when the website visitor's browser communicates directly with the alleged eavesdropper).

***No Predicate Violation of Clauses One or Two:*** The third clause of Section 631(a) requires a predicate violation of either the first or second clauses, which did not occur here. "A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)." *Swarts*, 689 F. Supp. 3d at 744; *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause. . . ."). Thus, Hilton Holdings cannot be liable under the third clause.

### B. There is No Section 631(a) Violation Through Aiding and Abetting Unlawful Conduct by Meta under Clause Four.

Plaintiffs also fail to adequately allege Hilton Holdings aided and abetted Meta's purported underlying wiretapping violation, precluding liability under the fourth clause of Section 631(a).

***Meta had no intent to unlawfully wiretap*:** Section 631(a) requires a showing that Meta was "intentionally" wiretapping. *See* Cal. Penal Code § 631(a); *Tavernetti*, 22 Cal. 3d at 192; *see also People v. Buchanan*, 26 Cal. App. 3d 274, 287 (1972)

(noting § 631(a) contains an intent requirement). Here, Meta could not unlawfully wiretap Plaintiffs' communications because Plaintiffs expressly consented to sharing information with Meta. "When individuals sign up for a Facebook account, they agree to Meta's Terms of Service, Data Policy, and Cookies Policy. . . These policies are contractually binding on both Meta and its users." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 786 (N.D. Cal. 2022). "Courts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states['] wiretapping statutes and related claims." *Silver v. Stripe, Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021); *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (finding plaintiffs' consent to Meta's Terms and policies—which "contain numerous disclosures related to information collection on third-party websites"—"constitute[d] a valid contract" and barred their CIPA claim). By agreeing to Meta's policies, Plaintiffs agreed to share the activity alleged with Meta.

Moreover, simply allowing website operators to use the Meta Pixel does not plausibly allege Meta intended to "aid and abet" another party's purported violation of wiretapping laws. FAC, ¶ 82. The Meta Business Tools Terms require the third parties to "represent and warrant that [third parties] . . . have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use of" personal information Meta Business Tools users collect. RJN, Ex. O, at 2.

A court in this District recently reached this ***exact conclusion***: the mere possibility that the Meta Pixel might be misused by third parties to wiretap is insufficient to establish intent to violate CIPA. *See, e.g., B.K. v. Desert Care Network.*, No. 2:23-CV-05021, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (rejecting arguments that Meta "intentionally received and used user data" from the defendants because plaintiffs "d[id] not allege that Meta knew or should have known that the data it received from [d]efendants was collected without users' consent"). Likewise,

unintentional or inadvertent receipt of information cannot support a CIPA claim; data received "by chance" is not data received in a manner that intentionally violates a statute. *Smith*, 70 Cal. 2d at 133.

Plaintiffs attempt to construe Hilton Holdings' use of the Meta Pixel on the Website as knowledge that its implementation would allow Meta to ***unlawfully*** wiretap visitors' communications. But the fourth clause requires "that the defendant must be acting with the third party ***in order to*** have the third party perform acts that violate the statute." *Smith v. YETI Coolers, LLC*, No. 24-CV-01703, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (emphasis original); *see also Lozano*, 73 Cal. App. 5th at 727-28. Plaintiffs' allegations that Meta simply makes the Meta Pixel available fall far short of this threshold.

***Inadequate conclusory allegations*****:** Plaintiffs' conclusory allegations simply parrot the language of 631(a)'s fourth clause without offering any specifics. *See* FAC, ¶¶ 2, 44, 111. Courts dismiss such claims when intent is not adequately pleaded. For example, in *Esparza v. UAG Escondido A1 Inc.*, the plaintiff alleged that the defendant car dealership was liable under Section 631(a) on an aiding and abetting liability theory because the dealer embedded a third-party's chat software onto its website. *See* No. 23-CV-0102, 2024 WL 559241, at *1 (S.D. Cal. Feb. 12, 2024). The Court found the complaint failed to allege the defendant knowingly aided or abetted the chat software provider to intercept visitor communications simply by implementing the software on the website. *Id.* at *6.

### C. Plaintiffs Fail to Allege Interception of "Contents."

The FAC also fails allege that Meta "read" or "attempted to read" the contents of Plaintiffs' communication. Under Section 631(a), the "contents" of a communication means "the substance, purport or meaning of [the] communication"—i.e., the "intended message conveyed by the communication," which is distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106

(9th Cir. 2014); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Non-actionable "record information" includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023).

The FAC merely alleges that Meta obtains "record information" rather than the "contents" of Plaintiffs' communications. FAC, ¶¶ 43, 48. Plaintiffs allege that Meta received "name and user-specific values contained in Facebook cookies," and "guest record" information in an automatically generated URL containing basic booking information. *Id.* That "record information" is not contents of a communication and is insufficient to state a claim under Section 631(a). *See Zynga*, 750 F.3d at 1107.

Accordingly, Plaintiffs' 631(a) claim fails under each of the statute's four clauses and should be dismissed with prejudice.

## VI. PLAINTIFFS FAIL TO ALLEGE A CONFIDENTIAL COMMUNICATION UNDER SECTION 632

Plaintiffs' Section 632 claim independently fails because it does not allege the interception of "confidential" communications.

Section 632 prohibits "intentionally and without the consent of all parties to a *confidential* communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication . . . ." Cal. Penal Code § 632(a) (emphasis added). A communication is "confidential" only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, No. 20-CV-04688, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021). Courts apply a presumption that internet-based communications are not confidential within the meaning of Section 632. *See Rodriguez*, 2021 WL 2026726, at *7; *see also People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("Internet users have no expectation of privacy in . . . the websites they

/////

visit because they should know that this information is provided to and used by Internet service providers . . . .”).

Plaintiffs attempt to plead around this presumption by arguing their communications were “confidential” pursuant to California Civil Code section 53.5, California’s “Guest Records” statute. Cal. Civil Code § 53.5; FAC, ¶ 2. This statute prohibits the disclosure of lodging “guest records” to third parties. Cal. Civ. Code § 53.5. A “guest record” includes “any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver’s license number, other official form of identification, credit card number, or automobile license plate number.” Cal. Civ. Code § 53.5(c). As the FAC points out, the statute was enacted to “ensur[e] that the personal information disclosed by patrons of lodging establishments . . . is used only for the intended business purposes.” FAC, ¶ 11 (quoting Cal. S.B. 1194 (September 27, 2018)).

This theory fails because Plaintiffs’ allegations do not fall within the scope of Civil Code section 53.5. Plaintiffs allege only the disclosure of “names and user-specific values contained in Facebook cookies . . . including URLs that disclose that Website users have reserved a room, checked out, paid, and confirmed their room reservation.” FAC, ¶ 121.

Notably, there is only *one* category of information alleged that overlaps with Section 53.5—Plaintiffs’ names—which Plaintiffs *already* provided to Meta and is therefore not “confidential.” FAC, ¶ 121; *see also* FAC, ¶ 20 (“[W]hen creating a [Facebook] account, users must provide their first and last name, along with their birthday and gender.”). Plaintiffs otherwise allege only the disclosure of the existence of booking information (not “guest records” like an address, credit card number, or driver’s license number), which does not bear on an objectively reasonable expectation of privacy.

Section 53.5 further expressly carves out disclosures by businesses "providing business records containing a guest's or passenger's name . . . to a third-party service provider that the private business contracts with for business-related services." Cal. Civ. Code § 53.5(i). Here, the FAC alleges Meta uses event data to help websites on advertising campaigns and in targeting potential customers. FAC, ¶ 37. Plaintiffs' allegations fall squarely within the carve-out as the alleged disclosure was for business purposes. Moreover, Plaintiffs consented to the sharing of that information with Meta. *See supra*, Section IV. Thus, Plaintiffs' communications were not "guest records" under Civil Code § 53.5 and not "confidential" within the meaning of Section 632, independently requiring dismissal of the claim.

To the extent the FAC now attempts to allege a disclosure of "guest records" can only be made pursuant to a court order, *see* FAC ¶¶ 3, 4, 80, these new allegations miss the mark. Section 632 does *not* require a "court order," it merely prohibits eavesdropping or recording *without consent*. Here, Plaintiffs consented to the alleged conduct through their agreement to the applicable Hilton and Meta terms and privacy policies.

## VII. PLAINTIFFS' EQUITABLE CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW

Plaintiffs' UCL and unjust enrichment claims fail because Plaintiffs concede they have an adequate remedy at law through CIPA, under which Plaintiffs seek both statutory damages and injunctive relief. FAC, ¶¶ 114, 125. "Regardless of whether California authorizes its courts to award equitable restitution under the UCL and CLRA when a plain, adequate, and complete remedy exists at law, . . . federal courts rely on federal equitable principles before allowing equitable restitution in such circumstances." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (2020); *see also LMP Holdings, LLC v. PLY Enters., LLC*, 2012 WL 4344302, at *5 (E.D. Va. Sep. 21, 2012) (dismissing claim for equitable relief because of "failure to allege facts that a legal remedy would be insufficient to remedy the alleged harm"). In *Sonner*,

the Ninth Circuit affirmed dismissal of the plaintiff's equitable claims because "she fail[ed] to demonstrate that she lack[ed] an adequate legal remedy." 971 F.3d at 845.

This Court has consistently followed *Sonner* when dismissing UCL and other equitable claims where, as here, the complaint demonstrated an adequate remedy at law. *See Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*, No. 2:22-CV-09030, 2023 WL 5506021, at *5 (C.D. Cal. 2023) (Wilson, J.) ("The Court agrees with [Defendant] that [Plaintiff] has failed to plead a violation of the [UCL] because [Plaintiff] does not state why remedies at law are inadequate."); *Radical Invs. Ltd. v. Good Vibrations Ent. LLC*, No. 2:22-CV-02752, 2023 WL 2372387, at *14 (C.D. Cal. Feb. 10, 2023) (Wilson, J.) (same); *Dotson v. Arizona Beverages USA LLC*, No. 2:22-CV-00923, 2022 WL 17886015, at *5 (C.D. Cal. June 27, 2022) (Wilson, J.) (same); *Medoff v. Minka Lighting, LLC*, No. 2:22-CV-08885, 2023 WL 4291973, at *12 (C.D. Cal. May 8, 2023) (Wilson, J.) (same). Under *Sonner* and its progeny, Plaintiffs' equitable claims must be dismissed.

## VIII. PLAINTIFFS LACK STATUTORY STANDING UNDER THE UCL

Plaintiffs lack statutory standing under the UCL because they fail to allege a loss of money or property resulting from the alleged unfair competition. UCL claims "may only be brought by 'a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *R.C. v. Walgreen Co.*, No. 23-CV-1933, 2024 WL 2263395, at *17 (C.D. Cal. May 9, 2024) (*citing* Cal. Bus. & Prof. Code § 17204); *see also In re Capital One 360 Sav. Acct. Int. Rate Litig.*, 2024 WL 4753821, at *37 (E.D. Va. Nov. 12, 2024) (same). "In the absence of allegations that Plaintiff incurred actual financial losses, . . . she has not plausibly alleged economic injury for purposes of UCL standing." *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977-78 (C.D. Cal. 2023) (finding no economic injury for alleged loss of private data and the diminution of its value because plaintiff failed to allege specific facts showing that she could have sold the limited data collected, ever attempted or intended to sell her data, or that collection, without more, impeded her ability to sell it.). So too here.

Plaintiffs contend in conclusory fashion that Hilton Holdings' actions "caused damage to and loss of plaintiffs' [] right to control the dissemination and use of their personal information." FAC, ¶ 137. Plaintiffs still fail to allege any specific facts showing that they could have otherwise sold the data, that they ever attempted or intended to sell it, or that their efforts were impeded. Accordingly, Plaintiffs lack statutory standing under the UCL because they fail to allege any economic value of their data to them, or that they lost money or property by the alleged use of their data.

## IX. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE THERE ARE CONTRACTS COVERING THE ALLEGED CONDUCT

California courts "routinely construe" unjust enrichment claims "as [quasi-contract] claims for restitution." *Biovill Co. v. Oh, No.*, No. 2:23-CV-07920, 2024 WL 3001472, at *4 (C.D. Cal. Apr. 25, 2024) (Wilson, J.); *see also Shin v. Sanyo Foods Corp. of Am.*, No. 2:23-CV-10485, 2024 WL 4467603, at *4 (C.D. Cal. Aug. 13, 2024) (Wilson, J.). So too under Virgina law, unjust enrichment is an implied contract action based on principles of equity. *Colonna's Shipyard, Inc. v. Coastal Cement Corp.*, 2023 WL 3321734, at *2 (E.D. Va. May 9, 2023). A quasi-contract action "cannot lie where a valid express contract covering the same subject matter exists between the parties." *Kahn v. FCA US LLC*, No. 2:19-CV-00127, 2019 WL 3955386, at *8 (C.D. Cal. Aug. 2, 2019) (Wilson, J.) *citing Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017) (dismissing unjust enrichment claims with prejudice "where [] express binding agreements exist and define the parties' rights."); *see also Colonna's Shipyard*, 2023 WL 3321734, at *3 ("[T]he unjust enrichment claim must be dismissed in light of the express contract between the parties."). Plaintiffs allege that they "did not consent to the collection and use of their personal, private data." FAC, ¶ 145. However, this conclusory allegation is directly contradicted by the terms of Plaintiffs' valid contracts with Hilton Holdings (Site Agreement, Hilton Honors Terms (incorporating the Hilton Global Privacy Statement)) and Meta (Meta Terms) that cover the collection

and use of their data. RJN, Ex. E, F, G, H, M. Accordingly, Plaintiffs' unjust enrichment claim fails because the parties have contractual agreements governing the conduct alleged in the FAC. *See supra*, Section IV. Plaintiffs consented to sharing of their information under those agreements, and these express contracts covering the disputed conduct bar the claim. *See Kahn*, 2019 WL 3955386, at *8.

## X. THE COURT SHOULD TRANSFER THIS CASE TO THE EASTERN DISTRICT OF VIRGINIA

Under the Site Agreement and the Hilton Honors Terms, Plaintiffs agreed to the Eastern District of Virginia as the *exclusive* venue for all disputes with Hilton Holdings. Shati Decl., ¶ 10; Anderson Decl. ¶ 5; "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 571 U.S. at 62. "[F]orum selection clauses are presumptively valid and should only be set aside if the party challenging enforcement can 'clearly show that enforcement would be unreasonable and unjust.'" *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1203 (C.D. Cal. 2015) (*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

Enforcing this venue clause is required by these agreements and is in the interests of justice. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63. A forum selection clause will be enforced unless (1) its inclusion in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court; and (3) if enforcement "would contravene a strong public policy of the forum in which suit is brought." *LaCross*, 95 F. Supp. 3d at 1203 (*citing Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007)).

First, the inclusion of the clause in Site Agreement and Hilton Honors Terms is not a product of fraud or overreaching. *See Earthmade*, 2022 WL 19405239, at *4 (enforcing clause when plaintiff did "not allege that the inclusion of the forum

selection clause itself was the product of fraud" and "the complaint [did] not even mention the forum-selection clause"); *see also J.B. v. Aimbridge Hosp., LLC*, No. 18-CV-8014, 2019 WL 11505267, at *7 (S.D. Fla. Apr. 17, 2019) (recommending transfer to the Eastern District of Virginia based on consent to Hilton's Site Agreement, including its exclusive venue provision). By voluntarily enrolling in Hilton Honors and booking rooms on the Website and Hilton Honors app, Plaintiffs agreed to this venue provision in the Site Agreement and Hilton Honors Terms, which were conspicuously disclosed to Plaintiffs in bolded font with blue hyperlinks and required Plaintiffs to affirmatively consent before they could book a room. Shati Decl., ¶¶ 5-6; Anderson Decl. ¶¶ 10-11, 13; RJN, Ex. A, at 3, Ex. B, at 1-2, Ex. N, at 3. *Allen v. Shutterfly, Inc.*, No. 20-CV-02448, 2020 WL 5517172, at *7 (N.D. Cal. Sept. 14, 2020) (finding the plaintiff consented to website terms presented above a "Submit Payment" button); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) (same). Plaintiffs have repeatedly reaffirmed their agreement by booking rooms, including bookings as recently as September 2024.

Second, transfer would not "deprive [Plaintiffs] of their day in court." *See M/S Bremen*, 407 U.S. at 18 ("[T]he party seeking to escape his contract [must] show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."). The Eastern District of Viriginia is entirely capable of adjudicating this dispute in the same manner as this Court. Third, enforcement would not contravene any "strong public policy" in California. *See Landec Corp. v. Certain Underwriters at Lloyds, London*, No. 21-CV-214274, 2021 WL 7540632, at *3 (C.D. Cal. Dec. 28, 2021) ("[U]nless a plaintiff can demonstrate that her remedy is altogether foreclosed and unavailable in the transferee court, courts do not consider policy arguments unrelated to venue."). Simply transferring the venue to the Eastern District of Virginia does not foreclose any of Plaintiffs' claims or remedies.

/////

For these reasons, the Court should enforce the forum selection clause and transfer this case to the Eastern District of Virginia if it does not first dismiss the case. *See Aimbridge Hosp., LLC*, 2019 WL 11505267, at *7.

**XI. CONCLUSION**

For the reasons set forth above, Hilton Holdings respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' FAC in its entirety, or in the alternative, transfer the case to the Eastern District of Virginia.

Dated: January 24, 2025

**DLA PIPER LLP (US)**

By: */s/ Isabelle Ord*
ISABELLE ORD
OLIVER M. KIEFER
MATTHEW C. DANAHER
ASHLEY BARTON

*Attorneys for Defendant*
HILTON WORLDWIDE HOLDINGS INC.

**Certificate of Compliance with L.R. 11-6.1.**

The undersigned, counsel of record for Defendant Hilton Holdings, certifies that this brief contains 6,835 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 24, 2025

**DLA PIPER LLP (US)**

By: */s/ Isabelle Ord*
ISABELLE ORD
OLIVER M. KIEFER
MATTHEW C. DANAHER
ASHLEY BARTON

*Attorneys for Defendant*
HILTON WORLDWIDE HOLDINGS INC.