**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

SUELLEN CRANO and KELLY COONEY, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

HILTON WORLDWIDE HOLDINGS, INC., AND DOES 1-10,

*Defendants.*

Case No. 1:25-cv-00305-RDA

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**


Table of Authorities ........ iii

Introduction ........ 1

Background ........ 1

Argument ........ 2

I. Hilton Cannot and Did Not Obtain Consent to Disclose Guest Records to Meta ........ 2

A. Guest Records Cannot Be Disclosed Absent a Court-Issued Subpoena, Warrant or Order ........ 2

B. Hilton's Site Agreement, Hilton Honors Terms, and Global Privacy Policy Cannot Establish Consent ........ 3

C. Hilton Cannot Rely on Meta's Privacy Disclosures to Show Consent Here. ........ 6

II. Plaintiffs State a CIPA § 631 Claim ........ 9

A. Hilton's Arguments It Did Not "Directly" Violate Clauses One, Two and Three Are Beside the Point. ........ 9

B. Hilton Violated Clause Four by Aiding, Agreeing With, Employing or Conspiring with Meta. ........ 10

C. Meta Violated Clauses Two and Three by Eavesdropping on Plaintiffs' Communications with Hilton and Using Those Communications for its Own Purposes. ........ 15

D. Meta Read or Learned the "Contents or Meaning" of Plaintiffs' Communications with Hilton. ........ 22

III. Plaintiffs State a CIPA § 632 Claim ........ 24

IV. Plaintiffs' Equitable Relief Claims Are Properly Pled. ........ 27

V. Plaintiffs Have Statutory Standing Under the California UCL. ........ 29

VI. Plaintiffs' Unjust Enrichment Claim Is Not Barred by an Express Contract with Either Meta or Hilton ........ 30

Conclusion ........ 30

# TABLE OF AUTHORITIES

**Cases** **Pages**

*B.K. v. Desert Care Network*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) ... 20

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ... 6

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ... 17

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. Nov. 5, 2013) ... 25 n.8

*Britton v. Co–op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) ... 7

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 5, 23, 26, 27, 29

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ... 22

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 29

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019) ... 29

*Chapman v. Asbury Auto. Grp., Inc.*,
2016 WL 4706931 (E.D. Va. Sept. 7, 2016) ... 27

*Clatterbuck v. City of Charlottesville*,
708 F.3d 549 (4th Cir. 2013) ... 4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 10, 11, 13

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ... 6

*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ... 30

*Edleson v. Travel Insured Int'l, Inc.*,
2021 WL 4334075 (S.D. Cal. Sept. 23, 2021) ........................................................ 28

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. 2024) ........................................................................ 6

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ...................................................... 12, 13

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. March 25, 2015) ............................................... 25 n.8

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. 2024) ........................................................................ 6

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ........................................... 16, 17, 19

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................. 23

*In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"),
956 F.3d 589 (9th Cir. 2020) ................................................................................ 23

*In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel Healthcare*"),
647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................. 6, 7, 9 n.2, 19, 21, 22, 25 n.8

*In re Meta Pixel Tax Filing Cases* ("*In re Meta Pixel Tax*"),
724 F.Supp.3d 987 (N.D. Cal. March 5, 2024) ....................................... 19, 20, 21, 29

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................................. 4

*LMP Holdings, LLC v. PLY Enterprises, LLC*,
2012 WL 4344302 (E.D. Va. Sept. 21, 2012) .................................................... 28 n.9

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........................................................ 14

*Mirkarimi v. Nevada Prop. 1 LLC*,
2013 WL 3761530 (S.D. Cal. July 15, 2013) ........................................................ 25

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) .................................................. 9 n.2, 12

*Nacarino v. Chobani, LLC*,
2022 WL 344966 (N.D. Cal. Feb. 4, 2022) ........ 28 n.10

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972) ........ 15, 17

*People v. Stipo*,
2195 Cal. App.4th 664, 124 Cal. Rptr. 3d 688 (2011) ........ 27

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
39 F.4th 1158 (9th Cir. 2022) ........ 4

*Remacle v. Repperio, Inc.*,
2017 WL 11505574 (E.D. Va. Aug. 25, 2017) ........ 27

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 10, 12, 24

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal 2021) ........ 9 n.2

*Smith v. Facebook, Inc*,
262 F. Supp. 3d 943 (N.D. Cal. 2017). ........ 9 n.2

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024). ........ 26 n.8, 27

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (2020) ........ 28

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 10, 13

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187, 583 P.2d 737 (1978) ........ 18, 20

*United States v. Price*,
980 F.3d 1211, 1217 (9th Cir. 2019) ........ 18

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 5

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
2022 WL 844152 (N.D. Cal. Mar. 22, 2022) ........ 28

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 23

*Zarif v. Hwareh.com, Inc.*,,
2025 WL 486317 (S.D. Cal. Feb 13, 2025) .......... 9 n.2

**Statutes**

Cal. Civ. Code § 53.5(a) .......... 2, 16, 22, 25
Cal. Civ. Code § 53.5 (f),(i) .......... 3
Cal. Civil Code § 53.5(c) .......... 25
Cal. Penal Code § 631(a) .......... passim
Cal. Penal Code §632.01 .......... 13
Cal. Penal Code § 637.9 .......... 13

**Rules**

Fed. R. Civ. P. 8(a)(3) .......... 27
Fed. R. Civ. P. 8(d)(2) .......... 27
Fed. R. Civ. P. 9(b) .......... 14, 19

## INTRODUCTION

Hilton Worldwide Holdings, Inc. ("Hilton") operates a website on which customers can book Hilton hotel rooms. Hilton installed a hidden tracking technology on the website—referred to in the First Amended Complaint [ECF 29] ("FAC") as the Facebook Tracking Pixel—that captured customers' communications with Hilton and transmitted them to a third-party marketing company named Meta Platforms, Inc. (f/k/a Facebook) ("Meta"). The communications that Meta eavesdropped on identified both (1) the individual Hilton customer and (2) the hotel rooms the customer booked. This information is protected under Cal. Civ. Code § 53.5, which expressly prohibits hotel operators, like Hilton, from disclosing "guest records" to third parties absent a court-issued subpoena, warrant or order. Plaintiffs now assert claims under the California Invasion of Privacy Act ("CIPA") and other California laws on behalf of themselves and a putative class, seeking damages and equitable relief.

## BACKGROUND

Hilton operates an online booking platform—www.hilton.com—where guests can book hotel rooms at Hilton properties in California and around the world. FAC ¶ 1. Hilton installed a hidden tracking technology on the website called the Facebook Tracking Pixel. *Id*. ¶ 41. This technology intercepted customers' communications with Hilton's website and transmitted those communications—which included information identifying the individual hotel guests and the hotel rooms they reserved—to Meta. *Id*. ¶¶ 43–56. Meta used the information to build "custom audiences" for Hilton and other companies' marketing and also for Meta's internal "research and development" purposes and to improve the services it offered to other advertisers. *Id.* ¶¶ 23-40. The FAC also alleges that Hilton installed similar tracking technologies on its website offered by other third parties (*e.g.*, Google and Snapchat) that disclosed substantially similar data to those

entities. *Id.* ¶ 48 n.30.

Plaintiffs are Hilton customers and members of Hilton's loyalty program, Hilton Honors. *Id*. ¶¶ 3-4. Plaintiffs booked hotel rooms on www.hilton.com from their devices in California. *Id*. ¶¶ 3-4. Each time they did so, Meta captured their communications with Hilton in the manner described above. *Id*. Plaintiffs did not consent to these disclosures. *Id*. And, because Hilton continues to use the tracking technology at issue, Plaintiffs cannot use their accrued Hilton Honors points to book hotel rooms in the future without Hilton unlawfully disclosing their identities and room reservation details to Meta. *Id*.

## ARGUMENT

### I. Hilton Cannot and Did Not Obtain Consent to Disclose Guest Records to Meta.

Hilton argues that Plaintiffs consented to the disclosures at issue through Hilton's and Meta's online terms and conditions and privacy policies. ECF 31 at 7-10. These documents do not support Hilton's consent argument for several reasons.

#### A. Guest Records Cannot Be Disclosed Absent a Court-Issued Subpoena, Warrant or Order.

As an initial matter, Hilton's consent arguments are all beside the point because, under California law, guest records cannot be disclosed absent "a court-issued subpoena, warrant or order." Cal. Civ. Code § 53.5(a) (the "Guest Records Statute"). Importantly, the Guest Records Statute prohibits disclosure of guest records without court process "[n]otwithstanding any other law." *Id.* Hilton does not (and cannot) argue that it had a "court-issued subpoena, warrant or order" authorizing the disclosures at issue, and thus the disclosures were unlawful (and, as discussed in Section II(C) *infra*, "unauthorized" under CIPA) regardless of whether Hilton's or Meta's privacy policies purported to allow them.

Hilton argues that its disclosures did not violate the Guest Records Statute because they fall into the narrow exception for the disclosure of "business records" to "third-party service providers." ECF 31 at 16 (citing Cal. Civ. Code §§ 53.5(i)). That is not accurate. Meta is not a "third-party service provider" under the Guest Records Statute. *See* Cal. Civ. Code §§ 53.5 (f) and (i). The term "third-party service provider" is limited to only those service providers that have "no independent right to use or share the data" beyond the services provided to the hotel. Cal. Civ. Code § 53.5(f). Meta, in contrast, had a right to use the data for its *own* purposes. *See* FAC ¶¶ 36-40. In particular, the agreement between Hilton and Meta authorized Meta to use the data captured by the Facebook Tracking Pixel to, among other things: (a) "personalize the features and content … that [Meta and its affiliates] show people on and off our Meta Products"; (b) "promote safety and security on and off the Meta Products"; (c) perform general "research and development"; (d) "improve the Meta Products"; and (e) "aggregat[e] such [data] with other data collected from other advertisers or otherwise collected on Meta Products" for the purposes of enabling Meta to target and deliver advertising for all of its customers. FAC ¶¶ 36-40 (citing Meta Business Tools Terms, available at: https://m.facebook.com/legal/businesstech). In light of these rights, Meta is not and cannot be a "third-party service provider" under Cal. Civ. Code § 53.5(f), and thus the exception in Cal. Civ. Code § 53.5(i) does not apply.

### B. Hilton's Site Agreement, Hilton Honors Terms, and Global Privacy Policy Cannot Establish Consent.

Hilton argues that Plaintiffs consented to the alleged disclosures by agreeing to the Hilton Site Agreement, Hilton Honors Terms, and Hilton Global Privacy Statement. ECF 31 at 9-10. There are two threshold problems with this argument. First, none of those documents are referenced in the FAC or subject to judicial notice, and thus none can be considered when resolving Hilton's motion to dismiss. *See* Plaintiffs' Opposition to Defendant's Request for Judicial Notice.

Second, even if these documents were potentially subject to judicial notice (and they are not), Plaintiffs expressly allege that they did *not* consent to the disclosures at issue (FAC ¶¶ 3-4), and it is improper to judicially notice *evidence* at the pleading stage for the purpose of contesting the allegations in the complaint. *E.g.*, *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013) ("[W]hether information is the proper subject of judicial notice depends on the use to which it is put," and district court erred where it judicially noticed materials at Rule 12 for the purpose of contesting allegations in the complaint because "[o]n a motion pursuant to Rule 12(b)(6), the court's task is to test the legal feasibility of the complaint without weighing the evidence that might be offered to support or contradict it."); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018) ("[A] court cannot take judicial notice of disputed facts" at the pleading stage); *cf. Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022) ("It is improper to accept the truth of matters asserted in incorporated documents only to resolve factual disputes against the plaintiff's well-pled allegations.").

Putting those threshold issues to the side, and assuming, for the sake of the argument, that Hilton's documents can be considered at this stage of the proceedings, none of the policies at issue authorizes Hilton to disclose guest's identities and room reservation information to a third-party marketing company for advertising purposes. On the contrary, the "Global Privacy Statement" Hilton put before the Court expressly states that it does *not* share that information with third parties. ECF 32-5 at 9-10 (Hilton Global Privacy Statement: stating "We do not share customers' room preferences with third parties" and "We do not share customers' arrival times with third parties"). Additionally, nowhere in Hilton's privacy policies does it state that Hilton enables a third-party marketing company to intercept and eavesdrop upon customers' communications regarding room reservations with Hilton in real time.

At bottom, Plaintiffs allege they did not consent to the eavesdropping at issue. FAC ¶¶ 3-4. Hilton seeks to contest those allegations by judicially noticing documents outside of the Rule 12 record. But those very documents *disclaim* sharing room reservation information with third parties and are silent as to Meta's real-time inception of Plaintiffs' communications with Hilton. Thus, whether it comes from crediting Plaintiffs' allegations at the pleading stage, or by reading the actual text of Hilton's documents, there can be no question that Hilton cannot show consent at the present stage of the proceedings. *See e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage."); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) ("[C]onsent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent").

Hilton's documents, at most, give rise to a fact issue on consent. Hilton argues that its "Global Privacy Statement" authorized its conduct because it states that Hilton "partner[s] with certain third-party service providers to collect information," and those third parties "may use … pixels and similar technologies, and … may set and access cookies on your computer." ECF 31 at 9. Plaintiffs allege the opposite. FAC ¶¶ 3-4. And the same documents Hilton points to contain more specific representations regarding Hilton's commitment to protecting room reservation data, which specifically promise that Hilton will *not* disclose that data to third parties. ECF 32-5 at 9-10 (Hilton Global Privacy Statement: stating "We do not share customers' room preferences with third parties" and "We do not share customers' arrival times with third parties"). The question of whether a reasonable consumer would interpret the entirety of Hilton's documents as allowing

Hilton to enable Meta to intercept and eavesdrop on room reservation communications in real time should not be resolved on a motion to dismiss. *See*, *e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. 2024) ("Whether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) (declining to decide consent at Rule 12); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *3 (S.D. Cal. 2024) (similar).

**C. Hilton Cannot Rely on Meta's Privacy Disclosures to Show Consent Here.**

Perhaps because its *own* privacy policies expressly promise *not* to disclose room reservation information, Hilton primarily relies on *Meta's* general privacy policies in support of its consent argument. ECF 31 at 8-9. It is hard to see how *Meta's* policies could authorize Hilton's conduct. True, Meta's policies generally discuss Meta's collection of certain types of data from third-party websites. But where the third-party website at issue includes a privacy policy that specifically promises *not* to share specific information with Meta, no reasonable consumer would believe that Meta's general disclosures authorize the website owner to do exactly the opposite. *See In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel Healthcare*"), 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (recognizing that "Meta's policies notify Facebook users that Meta collects and uses their personal data, including data about their browsing behavior on some third-party websites, at least in part for targeted advertising," but declining to find consent because the policies "do not [] specifically indicate that Meta may acquire *[the sensitive] data* [at issue] obtained from Facebook users' interactions with their *[third-party] providers' websites.* Its generalized notice is not sufficient to establish consent.") (emphasis in original); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (declining to find consent where "[t]hose more specific disclosures

and assertions indicate that Favor would not disclose (or sell or use for marketing) users' personal information.").

There is also the oddity of Hilton attempting to enforce an agreement purportedly entered into between Plaintiffs and Meta, to which Hilton is not a party. Hilton argues that consent is matter of contract and that Meta's policies are "contractually binding" on Plaintiffs. ECF 31 at 12 (quoting *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 786, for proposition that "Meta's Terms of Service, Data Policy, and Cookies Policy. . . are ***contractually*** binding on both Meta and its users.") (emphasis added). But even if that's true, Hilton is not a party to, or a third-party beneficiary of, any agreement between Plaintiffs and Meta. *See* ECF 32-17 at 13, ¶ 5 ("No Third-party Beneficiaries" clause in Meta's terms of service). Thus, Hilton lacks standing to invoke any purported disclosure or collection rights contained in such an agreement. *Britton v. Co–op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) (noting that a "contractual right may not be invoked by one who is not a party to the agreement").

Putting the above aside, nothing in Meta's terms of use, privacy policy, or cookies policy authorizes Hilton to allow Meta to collect Plaintiffs' confidential room reservation communications in violation of California law. FAC ¶ 81. Meta's Terms of Service prohibit businesses, like Hilton, from using Meta's products in a manner that is "unlawful." *Id.* ¶ 83 (citing Terms of Service at https://www.facebook.com/legal/terms/update); *see also In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 794 (consumers understanding of Meta's policies "must [] be squared with [Meta's] representation that it 'requires' any third-party to have 'lawful rights to collect, use and share your data before providing any data to us.'") (quoting Meta's Data Policy). Meta's disclosures tell users that it has "policies around the kinds of information businesses can share with us" and that Meta does not "want websites or apps sending us sensitive information

about people," including "any information defined as sensitive under applicable laws, regulations and applicable industry guidelines." FAC ¶ 84 (citing Advertising Policy at https://www.facebook.com/policies/ads); see also id. ¶ 85 (quoting Meta's Help Center stating that Meta "prohibit[s] businesses or organizations from sharing … information defined as sensitive under applicable laws, regulations and industry guidelines.")fore providing any data to us.'") (quoting Meta's Data Policy).[1] Meta's disclosures tell users that it has "policies around the kinds of information businesses can share with us" and that Meta does not "want websites or apps sending us sensitive information about people," including "any information defined as sensitive under applicable laws, regulations and applicable industry guidelines." FAC ¶ 84 (citing Advertising Policy at https://www.facebook.com/policies/ads); *see also* Id. ¶ 85 (quoting Meta's Help Center stating that Meta "prohibit[s] businesses or organizations from sharing … information defined as sensitive under applicable laws, regulations and industry guidelines."). Meta expressly tells consumers that "[b]usinesses that advertise on Facebook are required to have any necessary rights and permissions to use this information, as outlined in our Custom Audience Terms that businesses must agree to." *Id.* ¶ 86 (quoting Meta Data Providers post at https://www.facebook.com/help/ 494750870625830?ref=dp). No reasonable consumer would read those disclosures as allowing Hilton to enable Meta to intercept electronic communications containing information identified as sensitive under California's Guest Records Statute.[2] And even

---

[1] *See also* META, UNITED STATES REGIONAL PRIVACY NOTICE, https://www.facebook.com/privacy/policies/uso/. For California residents, like Plaintiffs, Meta reiterates: "We require each of these partners to have rights to collect, use, and disclose your information before providing any information to us." The United States Regional Privacy Notice also restricts Facebook's ability to collect "sensitive personal information," stating they "will only use or disclose it either with your specific consent when required, or as otherwise permitted by law, including the CCPA."

[2] Hilton's case, *Smith v. Facebook, Inc.*, is distinguishable because it was a case against Meta (thus rendering Meta's disclosures relevant) and involved the disclosure of non-sensitive general

if there could be any debate on that issue, it would be inappropriate to resolve that factual dispute at Rule 12.

## II. Plaintiffs State a CIPA § 631 Claim

### A. Hilton's Arguments It Did Not "Directly" Violate Clauses One, Two and Three Are Beside the Point.

Hilton advances various arguments as to why it is not "directly" liable under CIPA § 631(a) clauses one, two or three. ECF 31 at 10-11. Each of these arguments is beside the point because Plaintiffs do not allege that Hilton is *directly* liable under clauses one, two or three. Rather, Plaintiffs allege that *Meta* violated CIPA § 631(a) clauses two and three, and that *Hilton* enabled Meta's conduct in violation of CIPA § 631(a) clause four. *E.g.*, FAC ¶¶ 2, 109-111.

Accordingly, Hilton's clause one argument (that Plaintiffs do not allege use of a "telephone or wire") is irrelevant, as Plaintiff does not allege a clause one claim. Hilton's clause two argument (that Hilton was a "party to the communications" and thus cannot be directly liable for eavesdropping on them) is misplaced because it was *Meta*, and not Hilton, that violated clause two, and Hilton does not and cannot argue that *Meta* was a "party to the communications."[3] And Hilton's clause three argument (that Plaintiffs do not allege *Hilton* violated clauses one or two, as a predicate to liability under clause three) misses the mark because Plaintiffs' allege *Meta* violated

---

browsing information not protected under any law. ECF 31 at 12 (citing 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017)); *see also In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 793 (distinguishing *Smith* on this basis). Here, Hilton, and not Meta, is the defendant; Hilton's own policies promise not to disclose the information at issue; and the information is protected under California law.

[3] Although Hilton's "party exception" argument is limited to the inapposite issue of whether *Hilton* was a party to the communications, Plaintiffs note for the sake of completeness that: (1) Meta was not a party to the communications, as Meta is a separate legal entity, *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11 (S.D. Cal. Feb. 13, 2025) (discussing the same issue), *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021) (similar); and (2) in any event, the "party exception" issue is "an affirmative defense" that "is not appropriate for resolution" on a motion to dismiss. *Mitchell v. Sonesta Int'l Hotels Corp.,* 2024 WL 4471772, at *7 (C.D. Cal. Oct. 4, 2024), *adopted as modified,* 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024).

clauses two and three, not Hilton. For all of these reasons, all of Hilton's arguments in the subsection captioned "There is No Direct Violation of Section 631(a) under Clauses One to Three" (ECF 31 at 10-11) are beside the point.

### B. Hilton Violated Clause Four by Aiding, Agreeing With, Employing or Conspiring with Meta.

Clause four of CIPA § 631(a) imposes liability on "any person who … in any [] manner … aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned [in clauses one, two or three] in this section." Cal. Penal Code § 631(a). A defendant violates clause four where it "enable[es]" another entity's wrongdoing. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."). A plaintiff can allege unlawful enabling in many different ways, including, as relevant here, that the defendant procured and installed tracking technology on its website that allowed a third-party marketing company to intercept the plaintiff's communications with the defendant. *E.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) (clause four violation where the defendant "procured Meta Pixel from Meta and installed it on their website"); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7–8 (N.D. Cal. Oct. 1, 2024) (similar); *Revitch*, 2019 WL 5485330, at *2 (clause four violation where the defendant installed tracking technology on its website that allowed the third-party vendor to intercept plaintiffs' communications with defendant).

Hilton argues that Plaintiffs' allegations regarding Hilton's conduct are "conclusory." ECF 31 at 11-13. That is not accurate. The FAC details exactly what Hilton did to enable Meta's eavesdropping. In particular: (1) Meta created the Facebook Tracking Pixel to track users' online

activity, but it cannot perform that function unless a website owner decides to install it on a website; (2) Hilton procured the Facebook Tracking Pixel from Meta and installed it on the website at issue; (3) as is widely described in documents published by Meta and cited in the FAC, including the Meta Business Tools Terms that Hilton agreed to when it chose to install the technology on its website, the purpose of the Facebook Tracking Pixel is to track individuals' use of a website and send that information to Meta to facilitate targeted marketing and enable Meta's ability to perform "research and development" and improve its ability to target ads using the data collected; and (4) after Hilton installed it on its website, the Facebook Tracking Pixel compelled Plaintiffs' browsers to send Meta communications between Plaintiffs and Hilton that identified the hotel rooms they were booking alongside unique individual identifiers. FAC ¶¶ 29-56.[4] Meta could not have eavesdropped on the communications at issue if Hilton had not installed the Facebook Tracking Pixel on its website; and by choosing to install the Facebook Tracking Pixel on its website and agreeing to the Meta Business Tools Terms (which disclose the functionality of the technology), Hilton aided, agreed with, employed or conspired with Meta to intercept the communications at issue. These allegations are not "conclusory," and courts analyzing similar claims have rejected similar challenges to virtually identical pleadings. *E.g.*, *Cousin*, 681 F. Supp. 3d at 1130 ("Plaintiffs repeatedly allege throughout their pleading that [the defendant] intentionally procured

[4] Although Plaintiffs summarize the allegations in the FAC here, the FAC itself is rife with detail regarding how the Facebook Tracking Pixel works and how Hilton enabled the disclosures at issue, including, by way of example only: FAC ¶ 41 ("Defendant has integrated the Facebook Tracking Pixel into the Website."); ¶ 48 ("On the Website's checkout page, Facebook, as enabled by Defendant, contemporaneously intercepts a URL demonstrating that the user is reserving a particular room that fits the criteria that they selected (*e.g.*, hotel, location, rooms, travel dates, room rate, etc.), using the Facebook Tracking Pixel. And Facebook, as enabled by Defendant, contemporaneously intercepts an Event showing that the user has completed the checkout process and the reservation is confirmed."); ¶ 49 ("Facebook's Pixel—as enabled by Defendant—pairs the above-described event data with a user's Facebook ID").

Meta Pixel from Meta and installed it on their website," and "[t]he Court finds that this is sufficient to plead that [the defendant] either aided, agreed, employed, or conspired with Meta in the alleged interception of their information and data without their consent."); *Revitch*, No. 2019 WL 5485330, at *1 ("According to the complaint, [the defendant] embedded into its webpages a mechanism that allowed [the third-party technology provider] to eavesdrop on [the plaintiff's] communications. These allegations are enough to sustain the section 631 claims …"); *Mitchell*, 2024 WL 4471772, at *1 (sustaining a similar CIPA clause four claim against a hotel operator that disclosed guest records via tracking technology on its website).

Hilton's citation to *Esparza* does not merit a different finding. ECF 31 at 13 (citing *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *1 (S.D. Cal. Feb. 12, 2024)). There, the court granted a motion to dismiss on the grounds that the plaintiff failed to plead the defendant *knowingly* "aided and abetted" the eavesdropping at issue, and instead argued that the court could "infer" the defendant's knowledge based solely on the fact that the eavesdropping allegedly happened. *Esparza*, 2024 WL 559241, at *6 ("On the knowledge prong, Plaintiff argues the Court can infer Defendant's knowledge based on CarNow's 'wiretapping and eavesdropping' in violation of CIPA."). There are several problems with Hilton relying on *Esparza* here.

First, Hilton does not argue that Plaintiffs fail to allege Hilton's knowledge of the Facebook Tracking Pixel's functionality. Thus, Hilton is not even making the specific argument that was credited in *Esparza*. Instead, Hilton cites *Esparza* for the general proposition that allegations of a CIPA clause four violation cannot be "conclusory" or merely "parrot the language of 631(a) … without offering any specifics." *Id.* But, as described above, the FAC does not merely parrot the language of the statute; rather, it contains factual allegations detailing Hilton's use of the Facebook Tracking Pixel and how Hilton's decision to install that technology on its website enabled—and

was indeed the "but for" cause of—Meta's ability to eavesdrop on the communications at issue.

Second, the *Esparza* court misread clause four of CIPA § 631(a), which does not, by its terms, require a showing of knowledge. Cal. Penal Code § 631(a) (imposing liability on any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in clauses one through three). The omission of a scienter requirement in clause four is noteworthy, as *other* clauses in CIPA§ 631(a) contain express scienter requirements. *See* Cal. Penal Code § 631(a) (imposing clause one liability on any person who "intentionally" wiretaps a telephone or wire; and imposing clause two liability on any person who "willfully" reads an intercepted message; but not including a scienter element in clause four). If the California legislature had intended to include a scienter element in clause four (*e.g.*, "knowingly"), they could and would have included that language in the statute.

*Esparza* found the "knowledge" requirement *not* in the text of the statute but rather in "the common law definition of aiding and abetting." *Esparza*, 2024 WL 559241, at *6. It is not clear why the court thought that standard was appropriate, as CIPA§ 631(a) clause four does not address "aiding and abetting," but rather more broadly outlaws any person from "aiding, agreeing with, employing or conspiring" with the primary violator. Cal. Penal Code § 631(a). If the California legislature had intended CIPA § 631(a) clause four to track the common law standard for "aiding and abetting," it would have used the "aiding and abetting" language, as it did in other statutes. *Compare id. with* Cal. Penal Code § 637.9 (using "knowingly") & § 632.01 (using "aid and abet"). Recognizing this issue, other courts have declined to impose criminal "aiding and abetting" pleading requirements on CIPA § 631(a) clause four claims. *Cousin*, 681 F. Supp. 3d at 1130 ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *St. Aubin*, 2024 WL 4369675, at *8

(disagreeing with *Esparza* and finding "the approach in *Cousin* more persuasive because it more closely follows the language of the statute").

Third, even assuming, for the sake of the argument, that the knowledge requirement announced in *Esparza* was applicable to clause four claims, the FAC would nevertheless satisfy that standard. Under Federal Rule of Civil Procedure 9(b), "knowledge … may be alleged generally," and the FAC includes the following general allegation: "By compelling a visitor's browser to disclose event data for booking, alongside the unique individual identifiers described above, Defendant ***knowingly*** discloses information sufficiently permitting Facebook and/or an ordinary person to identify a specific individual's Website activity, including what webpages they visit and what items they view and purchase." FAC ¶ 56 (emphasis added). That general allegation is supported by numerous specific allegations regarding the disclosed functionality of the Facebook Tracking Pixel, including that the terms of use Hilton agreed to when it decided to install the technology on its website expressly disclosed the functionality of the Facebook Tracking Pixel *and* the fact that Meta used the information it collected thereby to target Hilton customers with advertising and for its own "research and development" purposes. *Id.* ¶ 36. Indeed, the entire purpose of the Facebook Tracking Pixel is to *track* users' use of a website and convey that information to Meta so that Meta can use it to create profiles of website users for marketing purposes and develop its product offerings. *Id.* ¶¶ 29-40. That is the primary purpose of the technology and the reason Hilton installed it on its website. Thus, the FAC alleges Hilton had knowledge of the existence of the Facebook Tracking Pixel on its website *and* the functionality of that technology. Collectively, these allegations show a clause four violation even under the knowledge standard used by courts, like *Esparza*, that have (erroneously) looked to common law "aiding and abetting." *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18,

2024) ("Here, Plaintiff asserts sufficient facts to support the substantial assistance prong of his aiding and abetting claim by alleging that Defendant embedded third-party tracking technologies into its website."). At most, in light of Plaintiffs' general allegations of knowledge under Rule 9(b), and specific allegations regarding Hilton's knowledge of the existence and functionality of the Facebook Tracking Pixel, any factual disputes regarding Hilton's state of mind should not be decided at Rule 12.

### C. Meta Violated Clauses Two and Three by Eavesdropping on Plaintiffs' Communications with Hilton and Using Those Communications for its Own Purposes.

For Hilton to be liable under CIPA § 631(a) clause four, Plaintiffs must also allege a predicate violation by Meta of CIPA § 631(a) clauses two or three. Clause two prohibits Meta from reading Plaintiffs' communications with Hilton "willfully and without consent" or "in any unauthorized manner." Cal. Penal Code § 631(a). Clause three prohibits Meta from using or attempting to use "any information so obtained." *Id.* The FAC plausibly alleges that Meta violated both of those clauses.

Meta read Plaintiffs' communications with Hilton "willfully." FAC ¶ 109. The word "willfully" in Section 631 means not "inadvertent." *People v. Buchanan*, 26 Cal. App. 3d 274, 287 (1972). And there was nothing accidental about Meta's receipt and review of the information at issue; capturing information on website users' use of a website is the entire point of the Facebook Tracking Pixel, and Meta read the communications it received via the Facebook Tracking Pixel by design, not fortuitously or inadvertently. FAC ¶¶ 25-40. Indeed, after it intercepts information via the Facebook Tracking Pixel, Meta "processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences" for targeted marketing (*id.* ¶ 32), and, in order to take those steps, Meta necessarily must read, attempt to read, or learn the contents of the intercepted communications.

The FAC alleges that Meta read Plaintiffs' communications with Hilton *both* "without consent" (*see* Section I, *supra*) *and* in an "unauthorized manner," which is a separate and independent basis for CIPA clause two liability. Cal. Penal Code § 631(a) (clause two prohibiting reading communications "willfully and without consent" *or* "in any unauthorized manner"). The Guest Records Statute prohibits the disclosure of guest records without "a court-issued subpoena, warrant or order." Cal. Civ. Code § 53.5(a). Hilton does not (and cannot) argue that it had such a basis for the disclosures here, and thus Meta's receipt and review of the communications was "unauthorized" as a matter of California law.

With respect to clause three, Meta used the information it obtained from Plaintiffs' communications with Hilton. In particular, Meta's business model depends on its use of information so obtained to create custom audiences for marketing purposes. FAC ¶ 32. And Meta also uses the same data for various internal purposes, including "research and development," product improvement, and sharing aggregate user data with other advertisers. *Id.* ¶¶ 36-39.

Courts have held that similar allegations are sufficient to show that Meta violated CIPA clauses two and three. For example, in *Gershzon v. Meta Platforms, Inc.*, the plaintiff alleged that Facebook Tracking Pixel "was installed on [a] DMV website, that personal information and communications are transmitted to Meta via the Pixel on the DMV website, that Meta is aware that this information is being transmitted, and that Meta intended to learn, and did learn, some meaning of the content in the communications." 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023). The court held that these allegations were sufficient to state clause two and three claims. *Id.* The same outcome is warranted here.

Hilton argues that Meta did not violate CIPA because it had "no intent to unlawfully wiretap." ECF 31 at 20-22. Although not entirely clear, it appears that Hilton's essential argument

is that Meta did not intend to *violate CIPA*, or intend to wiretap *without consent*, because Meta's Business Tools Terms required website operators, like Hilton, to have all necessary rights and permissions to share the transmitted data. ECF 31 at 11-12. There are a number of problems with this argument.

First, "intent" to unlawfully wiretap is an element of CIPA *clause one*, not clauses two (which requires reading communications "willfully and without consent" or "in any unauthorized manner") or three (which has no scienter element). Cal. Penal Code § 631(a) (imposing clause one liability on any person who "intentionally" wiretaps a telephone or wire; imposing clause two liability on any person who reads an intercepted message "willfully and without consent" or "in any unauthorized manner"; and imposing clause three liability on any person who "uses, or attempts to use, … any information so obtained"). Any effort to conflate the "intentional" and "willful" standards in clauses one and two, respectively, should be rejected, as the legislature chose different words and the distinction between them is meaningful. This is evidenced by a Congressional amendment to the ECPA (Electronic Communications Privacy Act), CIPA's federal corollary, which once contained the same "willful" terminology as CIPA. In 1986, Congress "increased the scienter requirement from 'willful' to 'intentional'" for all prongs of the federal law. *Bartnicki v. Vopper*, 532 U.S. 514, 547 n.4 (2001). California's legislature did not follow suit. Thus, clause two of Section 631 requires only a showing a "willfulness," which, as discussed above, means not "inadvertent." *Buchanan*, 26 Cal. App. 3d at 287. Accordingly, courts have recognized that "intent" arguments, like Hilton's, are misplaced in the context of clause two claims. *Gershzon*, 2023 WL 5420234, at *11 (referring to defendant's "intent" argument as "moot" in the context of a clause two claim).

Second, assuming, for the sake of the argument, that Hilton's "intent" argument was meant

to be a "willfulness" argument under clause two, it would nevertheless fail because clause two does not require that Meta willfully *violate CIPA*, or willfully *act without consent*, as Hilton appears to argue here. ECF 31 at 11-13. As a matter of basic grammar, the adverb "willfully" in clause two modifies the verbs "reads, or attempts to read, or to learn," not the separate adverbial phrase "without consent" (which also modifies the same verbs and not the adverb "willfully"). This interpretation is clear from the plain language of the statute, which imposes clause two liability on any person who reads an intercepted message "willfully *and* without consent," *not* "willfully without consent." Cal. Penal Code § 631(a) (emphasis added). It is also clear from the Supreme Court of California's decision in *Tavernetti* (cited in Hilton's brief at page 10), which states that the "willfulness" element in clause two applies to *the act* of reading or attempting to learn the contents or meaning of a communication. *See Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192, 583 P.2d 737 (1978) (describing CIPA clause two as prohibiting "wilfully attempting to learn the contents or meaning of a communication in transit over a wire.").

This reading of CIPA—*i.e.*, that "willfully" modifies *the act* at issue, and not whether the act was done without consent—aligns with how courts have interpreted similar language in other statutes. For example, in *United States v. Price*, the Ninth Circuit interpreted the mental state required for violating a law that proscribed "knowingly engag[ing] in sexual contact with another person without that other person's permission." 980 F.3d 1211, 1217 (9th Cir. 2019). The court held that "[t]he term 'knowingly' modifies only the verb phrase 'engages in sexual contact with another person' and does not modify the adverbial prepositional phrase 'without that other person's permission,'" and thus the "most natural grammatical meaning is that the government must prove that the defendant knew he engaged in sexual contact, not that … the defendant subjectively knew he lacked consent." *Id.* at 1218. As the Supreme Court of California made clear in *Tavernetti*, the

"willfulness" language in CIPA § 631(a) should be interpreted the same way.

To the extent Hilton is arguing that Meta did not "willfully" read the communications at issue, such an argument would fail for several reasons. For starters, "whether Meta in fact acted willfully is a question of fact to be resolved on a factual record," not on a motion to dismiss. *Gershzon*, 2023 WL 5420234, at *11; *see also In re Meta Pixel Tax Filing Cases* ("*In re Meta Pixel Tax*"), 724 F.Supp.3d 987, 1003 (N.D. Cal. March 5, 2024) (issues of Meta's knowledge and intent in light of its agreements with website owners present "a question of fact that the Court cannot resolve at this stage"). In any event, the FAC expressly alleges that Meta acted "willfully," and such a general allegation is sufficient, on its own, to allege state of mind under Rule 9(b). FAC ¶¶ 109-110 (Meta "willfully … read, attempted to read, and/or learned the contents or meaning of [the] electronic communications"); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). Beyond that, the other allegations in the FAC make clear that Meta read communications by design, not fortuitously or inadvertently. Indeed, the entire purpose of the Facebook Tracking Pixel is to *track* users' activity on websites and share that information with Meta, so that Meta can use it to create custom audiences for marketing and to perform internal "research and development." FAC ¶¶ 20-40. In order to perform those functions, Meta must necessarily read, attempt to read, or learn the contents of the intercepted communications. Thus, it is no surprise that, for the purposes of the heightened "intentional" element of an ECPA claim in another online tracking case, Meta ***did not dispute*** that it ***intentionally*** intercepts communications via the Facebook Tracking Pixel. *See In re Meta Pixel Healthcare*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). In short, Meta did not inadvertently read the communications at issue; intercepting and reading them is the entire point of the Facebook Tracking Pixel.

Hilton's citation to *B.K. v. Desert Care Network* does not merit a different outcome. ECF 31 at 12 (citing *B.K. v. Desert Care Network*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024)). There, the court held that a complaint failed to allege a predicate clause two violation by Meta because "the SAC does not allege that Meta knew or should have known that the data it received from Defendants was collected without users' consent." *Desert Care Network*, 2024 WL 5338587, at *3. The court cited no authority for such a knowledge requirement, and it is not supported by the text of the statute, which imposes clause two liability on any person who reads an intercepted message "willfully *and* without consent," *not* "willfully without consent." Cal. Penal Code § 631(a) (emphasis added). The *Desert Care Network* court's interpretation of clause two is incompatible with the text of the statute and the Supreme Court of California's decision in *Tavernetti*, which described clause two as prohibiting "wilfully attempting to learn the contents or meaning of a communication in transit over a wire," and did *not* hold that there is a separate knowledge requirement related to the absence of consent. *Tavernetti*, 22 Cal. 3d at 192.

Even assuming, for the sake of the argument, that Meta's state of mind was appropriately determined at Rule 12 *and* that the relevant standard is whether Meta "knew or should have known" that website owners transferred information to Meta without user consent, the FAC would still survive Hilton's motion to dismiss. Hilton's primary argument in that regard is that Meta's Business Tools Terms require website owners, such as Hilton, to have rights and permission to send the data to Meta. ECF 31 at 12. Thus, as Hilton sees it, Meta had no reason to believe that website owners, like Hilton, would deviate from that agreement by sending Meta data without user consent. *Id.* But, as courts have held, the mere existence of Meta's Business Tools Terms does not establish that Meta had no reason to believe that website owners deviated from those terms. *In re Meta Pixel Tax*, 724 F.Supp.3d at 1003 ("[T]he Court cannot conclude from [the Business Tools

Terms] mere existence that Meta and developers intended to or did comply with the terms rather than deviating from them to their mutual benefit.”). Indeed, the public record is rife with red flags that website owners *often* deviated from the Business Tools Terms and sent Meta user data without permission. Merely by way of example:

- Meta has repeatedly been sued for allowing third parties to place the Facebook Tracking Pixel on websites containing confidential information that the website owners lacked consent to share with Meta. *E.g.*, *In re Meta Pixel Tax*, 724 F.Supp.3d at 1003; *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 793.
- Meta was the subject of a 2024 FTC investigation and report that found, among many other things, that Meta and other social media companies used consumers’ personal information without “meaningful consent,” and that online tracking technologies, like the Facebook Tracking Pixel, gathered “uniquely confidential” information, such as “health conditions” and “searches on sensitive websites” “*without consumers’ knowledge or consent.*”[5]
- A simple Westlaw search shows that *hundreds* of cases have been filed against third-party website operators alleging the non-consensual disclosure of sensitive consumer information to Meta via the Facebook Tracking Pixel, many of which have survived motions to dismiss and advanced to later stages of the proceedings.[6] Those cases include numerous cases involving websites that handle statutorily protected data in industries with heightened consent regimes.[7]

In short, Meta’s Business Tools Terms may have paid lip service to the requirement that website

---

[5] FTC, *A Look Behind The Scenes, Examining the Data Practices of Social Media and Video Streaming Services*, September 2024, at 46 and 59, available at: https://www.ftc.gov/system/files/ftc_gov/pdf/Social-Media-6b-Report-9-11-2024.pdf

[6] All Federal Westlaw Search for “(Facebook Meta) w/10 Pixel” (returning 295 opinions in the last three years from March 26, 2025).

[7] Indeed, of the 295 results returned in the above query, 171 include the word “healthcare” and 91 include the term “VPPA,” which relates to the Video Privacy Protection Act, for instance.

owners obtained consent prior to sharing information with Meta, but Meta had ample reason to believe that it received data via the Facebook Tracking Pixel that was obtained without user consent, especially in industries with heightened consent regimes designed by legislatures to protect sensitive data, as the Guest Records Statute does for room reservation data in the state of California.

The primary purpose of Hilton's website was to allow website users to book Hilton hotel rooms online. Meta allowed Hilton to place the Facebook Tracking Pixel on that website, *notwithstanding* that the data it would receive therefrom would undoubtedly contain room reservation information that, under California law, could not lawfully be disclosed without "a court-issued subpoena, warrant or order." Cal. Civ. Code § 53.5(a). Meta received and read that data every time a user booked a hotel room on Hilton's website. Drawing the reasonable inference that California-based Meta is familiar with California privacy law (which it regularly litigates in cases involving the Facebook Tracking Pixel), Meta knew or should have known that Hilton would and did send it confidential guest records that Hilton lacked the right to share.

### D. Meta Read or Learned the "Contents or Meaning" of Plaintiffs' Communications with Hilton.

CIPA clause two prohibits Meta from reading the "contents or meaning of any message, report, or communications" between Plaintiffs and Hilton. Cal. Penal Code § 631(a). As used in § 631(a), "content" refers to the "intended message conveyed by the communication." *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 795; *see also Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'"). The "contents" of messages sent between a website user and a website can include, among other things: (a) "the names of buttons clicked," *see In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 795; (b) button clicks with descriptive contents,

*Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024); (c) "search queries" and "the particular document" requested, *see Brown*, 685 F. Supp. 3d at 935-936; (d) "full-string, detailed URLs" that include "'the particular document within a website that a person views,'" *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 605 (9th Cir. 2020); and (e) URLs that "contain a user's search terms," *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015).

Plaintiffs allege that Meta read the "contents" of their communications with Hilton. FAC ¶¶ 45-48. Hilton website users communicate with Hilton by requesting information about particular hotel rooms on particular dates, which information Hilton's website in turn provides. The "content" of those communications includes information regarding what hotel rooms and dates the user requested and the particular hotel room(s) the user goes on to book on Hilton's website. When website users book a hotel room on Hilton's website, they "select the destination to which they wish to travel, the desired dates for their trip, the number of rooms they require, the number of adults and children who will be traveling, etc." FAC ¶ 46. Meta contemporaneously intercepts Website users' button clicks selecting such items. *Id.* "As users progress through the Website's booking process, they visit URLs pertaining to their selections (i.e., destination, desired hotel in that destination, requested travel dates, etc.)." *Id.* ¶ 47. Meta contemporaneously intercepts the URL of the webpages visited by website users containing the foregoing and/or other information. *Id.* On the website's checkout page, Meta contemporaneously intercepts a URL demonstrating that the user is reserving a particular room that fits the criteria that they selected during the selection process (*e.g.*, hotel, location, rooms, travel dates, room rate, etc.), and event data showing that the user has completed the checkout process and the reservation is confirmed. *Id.* ¶ 48. In each of those ways, Meta learns the contents of the messages exchanged between the

user and the website—*i.e.*, that the individual user wants to book a particular hotel room on a particular date, and in fact booked that room.

Courts have rejected arguments that these types of online interactions are not "communications" under CIPA. For example, in *Revitch*, the plaintiff alleged that the defendant "embedded into its webpages a mechanism that allowed [the defendant] to eavesdrop on [the plaintiff's] communications" with the website. *Revitch*, 2019 WL 5485330, at *1. The defendant argued that the plaintiff's interactions with the website were not "communications" under CIPA. *Id.* The court rejected that argument because "Revitch's interaction with the Moosejaw website is communication within the meaning of section 631. … Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication." *Id.* Hilton's arguments here fail for the same reason.

## III. Plaintiffs State a CIPA § 632 Claim

Hilton's sole argument regarding Plaintiffs' CIPA § 632 claim is that the information at issue—room reservation details alongside a unique, personal identifier—is not "confidential" under the California Guest Records Statute. ECF 31 at 14-16. As Hilton sees it, the disclosures included "only *one* category of information [] that overlaps with [the Guest Records Statute]—Plaintiffs' names—which Plaintiffs already provided to Meta and is therefore not 'confidential.'" *Id.* at 24 (emphasis in original). This argument fails for two reasons.

First, Hilton's argument misunderstands the Guest Records Statute. Under California Civil Code § 53.5, hotels, like Hilton, "shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, ***all or any part of a guest record*** orally, in writing, or by electronic or any other means to a third party without a court-

issued subpoena, warrant, or order." Cal. Civ. Code § 53.5(a) (emphasis added). A "guest record," in turn, "includes ***any record that identifies an individual guest*** …" Cal. Civil Code § 53.5(c) (emphasis added). Thus, protected "guest records" under California Civil Code § 53.5 include more than just an individual's name; they include any record that identifies an individual as a guest of the hotel. *Id.* And hotel operators, like Hilton, are prohibited from disclosing "all or any part of" such a record "without a court-issued subpoena, warrant, or order." Cal. Civ. Code § 53.5(a). The purpose of the statute is obvious: when individuals stay in a hotel, alone or with their families, the hotel should not tell third parties who is there and when. FAC ¶¶ 11-12.

Here, the information that Hilton disclosed to Meta identified Plaintiffs as guests of Hilton's hotels. It was thus a "guest record" under California Civil Code § 53.5. A reasonable consumer would expect Hilton to comply with the law and refrain from disclosing that information to a third party without a court-issued subpoena, warrant or order. *See Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013) (confidentiality, under CIPA § 632 "requires 'nothing more than the existence of a reasonable expectation by one of the parties that no one is listening in or overhearing the conversation.'") (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 772-73 (2002)). Thus, Plaintiffs had an objectively reasonable expectation that Hilton would not use hidden online tracking technology to disclose that information to Meta for marketing purposes.[8] True, Plaintiffs separately provided their name to Meta when they created a Facebook

---

[8] Courts have recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive or protected under applicable laws, regulations, and industry norms. *See, e.g.*, *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 799 (finding communications confidential when protected by federal law); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013) ("The conversation allegedly included discussions protected by the attorney-client privilege, … as well as highly personal and private financial information[.] … Plaintiff has sufficiently alleged that he had a reasonable expectation the conversation would not be recorded.") (cleaned up); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015) ("due to the personal and financial nature of the conversations with Defendants, Plaintiff had a

account. But creating a Facebook account did not require Plaintiffs to disclose their Hilton hotel reservations to Meta. That information was confidential under the Guest Records Statute, and it was Hilton, and not Plaintiffs, that disclosed it.

Second, even if there were no Guest Records Statute, Plaintiffs would still have had an objectively reasonable expectation that Hilton would not disclose their room reservation details to Meta because Hilton's privacy policy promises not to do so. As noted above, the Global Privacy Statement Hilton put before the Court expressly states that it does *not* share room reservation information with third parties. ECF 32-5 at 9-10 (Hilton Global Privacy Statement, stating "We do not share customers' room preferences with third parties" and "We do not share customers' arrival times with third parties"). Consumers had a right to rely on those promises—and to reasonably believe Hilton would keep room reservation details confidential—whether or not disclosure of that same information was prohibited by California law.

Hilton argues that there is a presumption that internet-based communications are not confidential. ECF 31 at 14-15. But "[n]othing in Section 632 ties confidentiality to the mode in which a conversation is recorded." *Brown*, 685 F. Supp. 3d at 937. And, as courts have held, the argument that internet communications are presumptively non-confidential "fails on examination." *Id.* (distinguishing *Rodriguez v. Google LLC,* No. 20-CV-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021)). That is because "[t]he scattering of state and federal cases (none from the California Supreme Court) considering various communications on a case-by-case basis do not establish that California law presumes the non-confidentiality of all online communication." *Smith*,

---

reasonable expectation of privacy. … Plaintiff has adequately stated a CIPA claim."); *Smith v. Google, LLC*, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024) ("[T]he cases Google relies on involved internet chats and emails, not sensitive financial information submitted to a tax preparation website. … Google intercepted communications that were confidential under Section 632.").

2024 WL 2808270, at *6. Thus, "[t]hat [] communications occurred over the internet does not automatically mean that plaintiffs gave up th[e] expectation of privacy[.] … Times change, as do modes of communication." *Brown*, 685 F. Supp. 3d at 939.

Hilton quotes *People v. Stipo* for the proposition that "internet-based communications are not confidential within the meaning of Section 632." ECF 31 at 14 (quoting 195 Cal. App. 4th 664, 669, 124 Cal. Rptr. 3d 688, 693 (2011)). Hilton has misused *Stipo*, as is plain from reading the full quote and not the snippet Hilton provides. The court held that "e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *Stipo* says nothing about a general presumption of the lack of confidentiality of internet communications, and is instead focused on types of record information that are not at issue here.

**IV. Plaintiffs' Equitable Relief Claims Are Properly Pled.**

The FAC seeks two forms of equitable relief: (1) recovery for past harms via unjust enrichment or restitution under the UCL; and (2) a going-forward injunction to stop Hilton's conduct. The former is pled in the alternative to Plaintiffs' claims for damages because unjust enrichment and restitution under the UCL have different elements than Plaintiffs' damages claims and thus may survive while Plaintiffs' legal claims do not. This type of alternative pleading is expressly permissible under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(3), 8(d)(2); *Chapman v. Asbury Auto. Grp., Inc.*, 2016 WL 4706931, at *7 (E.D. Va. Sept. 7, 2016) ("under … federal law, a plaintiff is permitted to plead equitable theories of relief such as unjust enrichment ... as alternatives to [legal] recovery."); *Remacle v. Repperio, Inc.*, 2017 WL 11505574, at *9 (E.D. Va. Aug. 25, 2017) ("[W]hile Plaintiff cannot recover both in contract and in equity, this does not

mean that she cannot *plead* in the alternative. To the contrary, Federal Rule of Civil Procedure 8(d)(2) specifically permits alternative theories of recovery, regardless of whether 'in a single count... or in separate ones.'") (emphasis in original, internal quotations and citations omitted).[9] And with respect to Plaintiffs' request for a going-forward injunction, such relief is warranted, in addition to monetary recovery for past harms, because Plaintiffs have accrued Hilton Honors points that they intend to use to book Hilton hotel rooms in the future, but they cannot presently do so without Hilton unlawfully disclosing their identities and room reservation details to third party marketing companies. FAC ¶¶ 3-4.

Hilton argues that the Ninth Circuit's *Sonner* case requires dismissal of Plaintiffs' claims for equitable relief. ECF 31 at 16 (citing *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 845 (2020)). Hilton misapplies that decision. *Sonner* held the plaintiff "must establish that she lacks an adequate remedy at law before *securing* equitable restitution for past harm under the UCL and CLRA." *Sonne*r, 971 F.3d at 844 (emphasis added). Nothing in *Sonner* prohibits Plaintiffs from *pleading* equitable relief in the alternative, such as Plaintiffs' claims for unjust enrichment and restitution here. *E.g.*, *Yeomans v. World Fin. Grp. Ins. Agency, Inc*., 2022 WL 844152, at *7 (N.D. Cal. Mar. 22, 2022) ("*Sonner* does not preclude plaintiffs from pleading equitable remedies in the alternative."); *Edleson v. Travel Insured Int'l, Inc*., 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021) ("no controlling authority prevents a plaintiff from asserting alternative legal remedies at the pleading stage").[10] And *Sonner* has nothing at all to say about the viability of Plaintiffs'

---

[9] Even Defendant's case *LMP Holdings, LLC v. PLY Enterprises, LLC*, 2012 WL 4344302, at *5 (E.D. Va. Sept. 21, 2012) recognizes "it is clearly true that alternative pleading is allowed under the federal rules of procedure," where, as here, sufficient facts are plead to support the claim.

[10] *See also, e.g.*, *Nacarino v. Chobani, LLC*, 2022 WL 344966, at *10 (N.D. Cal. Feb. 4, 2022) (collecting cases and agreeing with cases finding pleading in the alternative permissible and noting that "[t]hese ruling[s] are consistent with Federal Rule of Civil Procedure 8 which allows for pleading in the alternative").

separate and independent claim for a going-forward injunction based on the fact that Plaintiffs cannot presently use their accrued Hilton Honors points to book Hilton hotel rooms without Hilton unlawfully disclosing their guest records to Meta.

**V. Plaintiffs Have Statutory Standing Under the California UCL.**

To plead statutory standing under the UCL, a private plaintiff must show "economic injury caused by unfair competition." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019). There are "innumerable ways" to make that showing, including where a plaintiff "surrenders in a transaction more … than he or she otherwise would have," or has "a present or future property interest diminished." *Id.* Additionally, "privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL." *In re Meta Pixel Tax*, 724 F. Supp. 3d at 1024. And courts addressing similar claims to those at issue here have found standing under the UCL where the plaintiff alleged: (a) that a defendant failed to fulfill "its contractual obligations under its Privacy Policy," *Cappello*, 394 F. Supp. 3d at 1019; (b) that "a user shares information with the expectation that it will be protected but the recipient does not actually protect it," *In re Meta Pixel Tax*, 724 F. Supp. 3d at 1024; and (c) that "plaintiffs [] suffered a loss of their personal information," *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (citing cases), where the plaintiffs provided "detailed allegations" on how "the 'cash value' of the data which [defendant] collected 'c[ould] be quantified,'" *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021).

Plaintiffs have UCL standing for two separate and independent reasons. First, with respect to the request for a going-forward injunction, Plaintiffs allege that they have accrued Hilton Honors points that can be exchanged toward the cost of future Hilton hotel room reservations. FAC ¶¶ 3-4. Plaintiffs would like to use those points in the future to book additional hotel rooms on Hilton's website, but cannot presently do so without Hilton unlawfully disclosing their identifies and

confidential guest records to third party marketing companies. That is an economic injury that gives rise to standing under the UCL.

Second, with respect to the request for restitution for past harms, Plaintiffs allege that Hilton breached its privacy policy and that Plaintiffs suffered a loss of personal information. FAC ¶¶ 77-79. The FAC contains detailed allegations regarding how the cash value of Plaintiffs' data can be quantified. *Id.* ¶¶ 57-70, 78-79. Plaintiffs shared their information with Hilton with the expectation that they would keep it confidential. Hilton did not do so, and Hilton did not compensate Plaintiffs for the value of the data that was unlawfully taken without permission.

Hilton's contrary authority is simply out of step with "the growing trend across courts" recognizing UCL standing under these circumstances. *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023) (citing cases).

## VI. Plaintiffs' Unjust Enrichment Claim Is Not Barred by an Express Contract with Either Meta or Hilton

Plaintiffs have not asserted a breach of contract claim. *Hilton* asserts that Meta's or its online terms and conditions bind Plaintiffs to privacy policies that defeat Plaintiffs' CIPA claims. Plaintiffs dispute that those contracts are enforceable by Hilton or that the privacy policies defeat their claims here. *See, supra,* Section I. Because Plaintiffs are not bringing a breach of contract claims, and indeed contest the existence of a valid and enforceable contract with either Meta or Hilton, Plaintiffs may plead an unjust enrichment claim in the alternative to any claim for damages. *See id.*; *see also, supra*, Section IV.

## CONCLUSION

The Court should deny Hilton's motion in its entirety.

Dated this 7th day of April 2025.

PHELAN PETTY PLC

/s/ *Jonathan M. Petty*
Jonathan M. Petty (VSB No. 43100)
Christopher P. Yakubisin (VSB No. 91186)
3315 West Broad Street
Richmond, VA 23230
Tel : (804) 980-7100
Fax: (804) 767-4601
jpetty@phelanpetty.com
cyakubisin@phelanpetty.com

Eric S. Dwoskin (admitted *pro hac vice*)
DWOSKIN WASDIN LLP
433 Plaza Real, Ste. 275
Boca Raton, FL 33432
Phone: (561) 849-8060
edwoskin@dwowas.com

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2025 a copy of the foregoing was filed with the Court's CM/ECF system, which will send a notice of electronic filing (NEF) to all counsel of record.

*/s/ Jonathan M. Petty*
PHELAN PETTY, LLC

Jonathan M. Petty, VSB No. 43100
Christopher P. Yakubisin (VSB No. 91186)
PHELAN PETTY LLC
3315 W. Broad Street
Richmond, VA 23230
(804) 980-7100 (telephone)
(804) 767-4601 (fax)
jpetty@phelanpetty.com
cyakubisin@phelanpetty

*Attorneys for Plaintiffs and the Putative Class*