**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SUELLEN CRANO, KELLY COONEY, individually and on behalf of other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>HILTON WORLDWIDE HOLDINGS INC., and DOES 1-10,<br><br>Defendants. | Civil Action No. 1:25-cv-00305-RDA |

**DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S**
**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Olivia Houston (VSB #95824)
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4253
olivia.houston@us.dlapiper.com

Isabelle Ord (*pro hac vice*)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
(714) 878-9849
isabelle.ord@us.dlapiper.com

Oliver M. Kiefer (*pro hac vice*)
Ashley L. Barton (*pro hac vice*)
Matthew C. Danaher (*pro hac vice*)
DLA Piper LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92101
(619) 699-2781
oliver.kiefer@us.dlapiper.com
ashley.barton@us.dlapiper.com
matt.danaher@us.dlapiper.com

*Counsel for Defendant Hilton Worldwide Holdings Inc.*

# TABLE OF CONTENTS

**INTRODUCTION** ..... 1
**ARGUMENT** ..... 2
**I. PLAINTIFFS' CIPA CLAIMS FAIL BECAUSE PLAINTIFFS CONSENTED TO SHARING THEIR BROWSING INFORMATION WITH META** ..... 2
A. Hilton Holdings' Agreements Establish Consent ..... 2
B. Meta's Policies Establish Consent ..... 4
C. The Guest Records Statute Does Not Apply ..... 5
**II. PLAINTIFFS' SECTION 631(a) CLAIM FAILS TO ALLEGE DIRECT LIABILITY, THE "CONTENTS" OF COMMUNICATIONS, OR INTENT** ..... 8
A. Plaintiffs Concede Hilton Cannot Be Directly Liable Under Section 631(a) ..... 8
B. Plaintiffs Fail to Allege Meta Read, Learned, or Attempted to Learn the "Contents or Meaning" of Plaintiffs' Alleged Communications in Violation of Clauses 2 or 3 ..... 9
C. The FAC Fails to Allege Hilton Holdings Aided and Abetted Unlawful Conduct by Meta in Violation of Clause 4 ..... 11
**III. PLAINTIFFS FAIL TO ALLEGE A CONFIDENTIAL COMMUNICATION TO SUPPORT THEIR SECTION 632 EAVESDROPPING CLAIM** ..... 15
**IV. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED EQUITABLE RELIEF** ..... 16
**V. PLAINTIFFS LACK STATUTORY STANDING TO BRING A UCL CLAIM** 18
**VI. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS BARRED** ..... 19
**CONCLUSION** ..... 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amazon.com, Inc. v. WDC Holdings LLC*,
2023 WL 2815140 (E.D. Va. Apr. 6, 2023) (Alston, J.)........................................................17

*Avdi v. State Farm Gen. Ins. Co.*,
2024 WL 5424416 (C.D. Cal. Nov. 27, 2024)...............................................................17

*B.K. v. Desert Care Network.*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024)...............................................................13, 14

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. Nov. 5, 2013).................................................................16

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023)..........................................................................18

*Brainchild Surgical Devices, LLC v. CPA Glob. Ltd.*,
2022 WL 992734 (E.D. Va. Mar. 31, 2022) (Alston, J.)...................................................20

*Bride v. Snap Inc.*,
2025 WL 819567 (C.D. Cal. Feb. 21, 2025)...................................................................17

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019)........................................................................18, 19

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)..........................................................................10

*Colonna's Shipyard, Inc. v. Coastal Cement Corp.*,
2023 WL 3321734 (E.D. Va. May 9, 2023)....................................................................20

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)..........................................................................13

*Edleson v. Travel Insured Int'l, Inc.*,
2021 WL 4334075 (S.D. Cal. Sept. 23, 2021).................................................................17

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. Mar. 25, 2015)................................................................16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).........................................................................................10

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)............................................................................19

*Gwaltney v. DeJoy*,
2024 WL 4122032 (E.D. Va. Sept. 5, 2024)....................3

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021)....................19

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024)....................14

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)....................10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................9

*In re Meta Pixel Healthcare*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................5, 16

*Miller v. NextGen Healthcare, Inc.*,
742 F. Supp. 3d 1304 (N.D. Ga. 2024)....................19

*Mollaei v. Otonomo Inc.*,
2025 WL 1163727 (9th Cir. Apr. 22, 2025)....................7

*Obillo v. i-Health Inc.*,
2025 WL 844389 (N.D. Cal. Mar. 18, 2025)....................17

*People v. Giordano*,
42 Cal. 4th 644 (2007)....................7

*People v. Iniguez*,
96 Cal. App. 4th 75 (Cal. Ct. App. 2002)....................12

*People v. Lee*,
31 Cal. 4th 613 (2003)....................12

*Revitch v. New Moosejaw, Inc.*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................10, 14, 15

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................3, 11

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................11

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. June 3, 2024)....................16

*Smith v. United Seating & Mobility L.L.C.*,
2024 WL 4441082 (C.D. Cal. Sept. 11, 2024) ....17

*Smith v. YETI Coolers LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ....12, 13

*Snyder v. G6 Hosp. LLC*,
2025 WL 1254382 (C.D. Cal. Apr. 14, 2025) ....1, 3, 6, 7

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (2020)....17

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....16

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)....12

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024)....11, 14

*Wainwright v. Superior Court*,
84 Cal. App. 4th 262 (2000) ....7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....9

**Statutes**

Cal. Civ. Code 53.5....1, 7

Cal. Civ. Code 53.5(i)....8

Cal. Civ. Code 53.5(c) ....6, 7

Cal. Civ. Code § 53.5(f)....8

Cal. Penal Code 631(a) ....11

Cal. Penal Code § 20....11

Cal. Penal Code § 631(a) .... *passim*

Cal. Penal Code §§ 631(a), 632(a)....2

Cal. Penal Code § 632(a) ....15

California Unfair Competition Law....1, 18, 19

# INTRODUCTION

Defendant Hilton Worldwide Holdings Inc.'s ("Hilton Holdings") Motion to Dismiss the First Amended Complaint ("FAC") should be granted because Plaintiffs still fail to allege violations of the California Invasion of Privacy Act ("CIPA") and California Unfair Competition Law ("UCL"), or a claim for unjust enrichment. Plaintiffs are Facebook users who consented to Meta's policies, and specifically, to share their browsing information when visiting websites like www.hilton.com (the "Website"). Plaintiffs' claims fail for each of the following reasons:

- Plaintiffs' consent to both (1) Hilton's Global Privacy Statement (which discloses the exact conduct alleged) and (2) Meta's policies defeats their claims. *See* Sections I.A, I.B.
- Plaintiffs fail to allege the interception of the "contents" of their communications with the Website or that Hilton or Meta intended to commit an unlawful wiretap. These deficiencies independently doom their Section 631(a) wiretapping claim. *See* Sections II.B, II.C.
- Plaintiffs fail to allege the disclosure of any information that constitutes "guest records" under California Civil Code § 53.5 (the "Guest Records" statute). *See* Section I.C. Their eavesdropping claim thus fails to allege an actionable "confidential" communication under Section 632. *See* Section III.
- Plaintiffs' equitable claims fail because (1) they plead an adequate remedy at law, *see* Section IV, (2) they lack actual harm to support statutory standing for their UCL claim, *see* Section V, and (3) their unjust enrichment claim is barred by their express contracts with Hilton Holdings. *See* Section VI.

The Opposition tries to obscure Plaintiffs' consent to the disclosures they allege in the FAC, balloon the Guest Records statute's confined scope—an untenable theory recently rejected in *Snyder v. G6 Hosp. LLC*, 2025 WL 1254382 (C.D. Cal. Apr. 14, 2025), a nearly identical

lawsuit—and manufacture equitable claims from the mere fact that data can be valuable despite a dearth of allegations Plaintiffs ever tried to monetize their data. This is Plaintiffs' second unsuccessful attempt to plead their claims. They should not be afforded a third. Hilton Holdings' Motion to Dismiss should be granted with prejudice.

## ARGUMENT

### I. PLAINTIFFS' CIPA CLAIMS FAIL BECAUSE PLAINTIFFS CONSENTED TO SHARING THEIR BROWSING INFORMATION WITH META

Plaintiffs consented to the Hilton Global Privacy Statement, Hilton Site Usage Agreement, and Hilton Honors Terms and Conditions (the "Hilton Agreements"), which disclosed the data collection alleged here, defeating their CIPA claims. *See* Cal. Penal Code §§ 631(a), 632(a).

#### A. Hilton Holdings' Agreements Establish Consent

The Opposition does not dispute Plaintiffs consented to the Hilton Agreements when booking rooms on the Website. *See* Opp'n at 3–5. Through the Hilton Agreements, Plaintiffs consented to the use of the Meta Pixel on the Website and the disclosure of information to Meta. *See* Mot. at 9–10.

Notwithstanding, Plaintiffs now claim that Hilton Holdings cannot show consent because it failed to honor the Hilton Global Privacy Statement by "sharing room reservation information" and "arrival times" when the Global Privacy Statement says Hilton Holdings will not share such information. *See* Opp'n at 5. This argument fails for two reasons. First, Plaintiffs concede that Hilton Holdings discloses the use of the Meta Pixel, and other similar third-party tracking technologies, in the Global Privacy Statement. *See* Opp'n at 5 (noting the Global Privacy Statement provides that Hilton "partner[s] with certain third-party service providers to collect information" that "may use . . . pixels and similar technologies, and . . . may set and access cookies on your computer"). This alone establishes consent. *See Snyder*, 2025 WL 1254382, at *3

(dismissing CIPA claims because "Defendant's privacy policy . . . extensively explains the disclosures Plaintiff is alleging").

Second, the FAC lacks any allegation Hilton Holdings shared Plaintiffs' "room preferences" or "arrival times" with third parties. *See generally* FAC. At best, Plaintiffs allege the disclosure of their "destination, desired hotel in that destination, requested travel dates, etc." that appear in URLs when browsing the website. FAC ¶ 47.[1] Plaintiffs cannot amend their complaint through their Opposition. *See Gwaltney v. DeJoy*, 2024 WL 4122032, at *3 (E.D. Va. Sept. 5, 2024) ("[A] complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted). In any event, since at least 2020, the Hilton Global Privacy Statement has specifically stated that Hilton "partner[s] with certain third-party service providers to collect information to engage in analytics, auditing, research, and reporting," and that "[t]hese third parties may use server logs, web beacons, tags, pixels, and similar technologies, and they may set and access Cookies on your computer or other device." RJN, Ex. C at 46, Ex. D at 23.

Plaintiffs allege they are Hilton Honors members who booked rooms through the Website "during the relevant period of time." FAC ¶¶ 3, 4. During that time, the Website has consistently required users to agree to the Global Privacy Statement, including when booking rooms. *See* RJN, Ex. A at 3, Ex. B at 2–3. Thus, Plaintiffs received and agreed to the detailed disclosures regarding data collection and sharing practices on the Website. *See* Mot. at 9–10. Plaintiffs' consent to these policies and their disclosures regarding the Meta Pixel defeat their claims. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing wiretapping claims for failure to plausibly allege lack of consent when privacy policy disclosed defendant may disclose "internet

[1] Hilton Holdings disputes this information constitutes "communications regarding room reservations with Hilton," Opp'n at 4, to the extent such communications relate to the California Guest Records Statute. *See* discussion *infra* Section I.C.

activity" to defendant's "partners").

B. Meta's Policies Establish Consent

Plaintiffs' Opposition does not (and cannot) dispute that Plaintiffs agreed to Meta's policies and disclosures as Facebook users.[2] Plaintiffs acknowledge that Meta notifies users like Plaintiffs that Meta collects data from third-party websites like Hilton Holdings' Website. *See* Opp'n at 6 ("True, Meta's policies generally discuss Meta's collection of certain types of data from third-party websites."). Their claims independently fail for this reason, too.

Plaintiffs offer only one unavailing argument to dispute the scope of their consent with Meta. Plaintiffs claim that their undisputed consent to the Meta agreements should be less significant because these agreements allegedly do not "authorize[] Hilton to allow Meta to collect Plaintiffs' confidential room reservation communications in violation of California law." Opp'n at 7. However, Hilton Holdings' Motion to Dismiss describes how Meta's policies disclose how the Meta Pixel works, that websites may share with Meta the information the Meta Pixel collects, and that, as Facebook users, Plaintiffs consented to sharing information. *See* Mot. at 8–9. And, for the reasons set forth below in Section I.C, none of this information constitutes guest records.

Plaintiffs' reliance on *Doe v. Fullstory, Inc.* is misplaced. *See* Opp'n at 6–7 (citing 712 F. Supp. 3d 1244 (N.D. Cal. 2024)). In *Fullstory*, the defendant's privacy policy disclosed only "some use of some tracking features" that stood at odds with "more specific disclosures and assertions [that] indicat[ed] that [defendant] would not disclose (or sell or use for marketing) users' personal

[2] Plaintiffs agree that the following exhibits are incorporated by reference into their FAC: Exhibit I (Meta Cookies Policy), Exhibit J (Facebook's "Create a New Account" page), Exhibit M (Meta Terms of Service), and Exhibit O (Meta Business Tools Terms) (collectively, the "Meta Agreements"). *See* ECF No. 55, at 1. Thus, even if the Court declines to take Judicial Notice of the Hilton Agreements, Plaintiffs' claims independently fail through their undisputed agreement to Meta's Cookies Policy (RJN, Ex. I) and Meta's Terms of Service (RJN, Ex. M), and through the Complaint's reliance on Meta's Business Tools Terms (RJN, Ex. O).

information." *Id.* at 1254. Not so here. Hilton Holdings' consistent disclosures in both the Hilton Agreements and Meta Agreements describe the presence, functionality, and data practices of the Meta Pixel and related technologies. *Fullstory* is distinguishable.

Plaintiffs' reliance on *In re Meta Pixel Healthcare Litigation* is similarly unavailing. There, the court found that Meta did not establish that "Meta's policies . . . specifically indicate[d] that Meta may acquire ***health data*** obtained from Facebook users' interactions with their ***medical providers' websites***." 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (emphasis added). Plaintiffs have not alleged that "health data"—sensitive information for which courts generally assign close scrutiny—is at issue here. In fact, for the reasons described below, Plaintiffs have not alleged that Hilton Holdings disclosed ***any*** sensitive information to Meta.

The Opposition's only other argument is a throwaway unrelated to consent. Plaintiffs posit that "Hilton lacks standing to invoke any purported disclosure or collection rights contained" in the Meta Policies that Plaintiffs concede govern their relationship with Meta. *See* Opp'n at 7. This is both incorrect and irrelevant. Hilton Holdings is not attempting to enforce a contractual right of Meta. Hilton Holdings raises these agreements (which Plaintiffs do not dispute their FAC incorporates by reference) to demonstrate that Plaintiffs were informed about Meta's data collection practices by virtue of their Facebook registration and use. *See* Mot. at 8–9.

Plaintiffs' consent to the Meta Agreements provides an independent basis on which Plaintiffs consented to the use of the Meta Pixel on the Website and Hilton Holdings' disclosure of information to Meta. This consent dooms Plaintiffs' CIPA claims.

C. <u>The Guest Records Statute Does Not Apply</u>

In a failed attempt to sidestep Plaintiffs' consent, the Opposition doubles down on the FAC's mischaracterization of California's Guest Records statute. *See* Opp'n at 2–3. The

Opposition attempts to expand a statute enacted to prescribe certain privacy rights for hotel guests into a sweeping law regulating common internet usage. The Guest Records statute does not apply to the information Plaintiffs voluntarily allowed Meta to collect because the FAC does not allege Meta received any "guest record" information other than Plaintiffs' names (which Meta already had because Plaintiffs are Facebook users), and because the very contract on which the FAC relies provides Meta the right to use the information Plaintiffs disclosed.

A "guest record" means "any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civ. Code 53.5(c); *see* Mot. at 15. Both the FAC and Opposition conveniently dodge all but one of the personal identifiers listed above, using smoke and mirrors to baselessly expand the statute's reach. *See, e.g.*, Opp'n at 26 (vaguely describing guest records to include "room reservation details" and "arrival times" without any mention of those terms in the FAC or allegation such information is disclosed to Meta). To be clear: the *only piece of information* within the statute's definition of "guest record" that Plaintiffs allege Meta received is their ***names***, which they also ***admit*** they already provided to Meta. *See* FAC ¶¶ 20, 121; Opp'n at 25–26 ("True, Plaintiffs separately provided their name to Meta when they created a Facebook account.").

A court recently rejected this same theory, which, as here, "underl[ies] the parties' dispute." *See Synder*, 2025 WL 1254382. In *Snyder*, the plaintiff alleged the disclosure of nearly identical types of information; namely, the "dates of the trip, number of guests, username, etc." *Id.* at *4. Reading the plain text of the "guest record" definition, the court found that the plaintiff "d[id] not explain how ***anything*** in those paragraphs" fell under the definition. *See id.* at *4 (emphasis added).

Like in *Snyder*, Plaintiffs have failed to allege how ***anything*** they allege (except their name) qualifies as a "guest record." This Court should follow *Snyder* in declining to improperly expand the reach of the statute.

The Opposition's exclusive reliance on the "including, but not limited to" language in Section 53.5(c) does not save their CIPA claims. *See* Opp'n at 24–25. "[I]ncluding, but not limited to" is "not a grant of carte blanche that permits all actions without restriction," and it cannot be used to create an "unreasonable expansion of the legislature's words." *Wainwright v. Superior Ct.*, 84 Cal. App. 4th 262, 267 (2000); *see also People v. Giordano*, 42 Cal. 4th 644, 660 (2007) (use of "including, but not limited to" "does not conclusively demonstrate that the Legislature intended a category to be without limits") (internal quotation marks omitted); *Mollaei v. Otonomo Inc.*, 2025 WL 1163727, at *3 (9th Cir. Apr. 22, 2025) (refusing to expand a different section of CIPA that "would transform [Section 637.7] from a circumscribed privacy law into an expansive consumer protection law targeting the collection of location data generally").

Here, Plaintiffs attempt to leverage this phrase to argue that "URLs pertaining to [Plaintiffs' Website] selections" fit within Section 53.5(c)'s narrow construction of Guest Records. FAC ¶ 47; Opp'n at 23. These "selections" are not actual booking reservations, and do not contain personal information as defined by the statute. *See* Cal. Civ. Code 53.5(c). Properly read in the context of the statute's listed types of personal information, the information Plaintiffs allege is disclosed to Meta is not a "guest record." As such, Plaintiffs' reliance on "including, but not limited to" fails. *See* Opp'n at 23; *Snyder*, 2025 WL 1254382, at *4 (holding "dates of the trip, number of guests, username," did not constitute "guest records" under Section 53.5).

Finally, Plaintiffs argument still fails because Meta is a "third-party service provider" with whom Hilton Holdings contracts. *See* Cal. Civ. Code § 53.5(f). The Guest Records statute allows

businesses to provide business records "to a third-party service provider that the private business contracts with for business-related services." Cal. Civ. Code 53.5(i). The Opposition reads Section 53.5(f)'s definition of a third-party service provider too narrowly. *See* Opp'n at 3. A "service provider" is not "limited to only those service providers that have 'no independent right to use or share the data' beyond the services provided to the hotel." *Id*. Instead, a "service provider" "means an entity contracted to provide services outlined in the contract that has no independent right to use or share the data ***beyond the terms of the contract***." Cal. Civ. Code § 53.5(f) (emphasis added).

Here, the FAC and Opposition admit that the Meta Business Tools Terms govern Hilton Holdings' use of the Meta Pixel. *See* FAC ¶ 26; Opp'n at 11 ("[B]y choosing to install the Facebook Tracking Pixel on its website" Hilton "agree[d] to the Meta Business Tools Terms."). The FAC also admits that this contract grants Meta the right to use the data for its own purposes. *See* FAC ¶¶ 36–40; Opp'n at 3 ("Meta, in contrast, had a right to use the data for its own purposes."). Plaintiffs quote ***directly from the Hilton-Meta contract*** when listing these purposes. *See* FAC ¶¶ 36–40; Opp'n at 3 (noting Meta has the right to use data for advertising and other purposes). As such, the alleged disclosures fall under the contracted services, *i.e.*, the Meta Business Terms, and the "third-party service provider" exception to the Guest Records statute applies. For each of these reasons, the Guest Records statute does not apply to Plaintiffs' claims.

## II. PLAINTIFFS' SECTION 631(a) CLAIM FAILS TO ALLEGE DIRECT LIABILITY, THE "CONTENTS" OF COMMUNICATIONS, OR INTENT

### A. <u>Plaintiffs Concede Hilton Cannot Be Directly Liable Under Section 631(a)</u>

The Opposition concedes that Hilton Holdings could not be ***directly*** liable for violating Section 631(a) because it was a party to Plaintiffs' alleged "communications" with the Website. *See* Opp'n at 9–10 ("Plaintiffs do not allege that Hilton is directly liable under clauses one, two or three."). Thus, to allege Hilton Holdings violated Section 631(a), Plaintiffs must plausibly allege

Hilton Holdings aided and abetted Meta's purported underlying wiretapping in violation of Section 631(a)'s fourth clause. Plaintiffs' attempt to establish aiding and abetting liability fails because they do not allege the predicate violation that actionable "contents" of their communications were intercepted, or that Meta intended to commit an unlawful wiretap.

B. Plaintiffs Fail to Allege Meta Read, Learned, or Attempted to Learn the "Contents or Meaning" of Plaintiffs' Alleged Communications in Violation of Clauses 2 or 3

Section 631(a) distinguishes between actionable "contents" of communications and non-actionable "record information." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). The "contents" of communications means "the substance, purport or meaning of [the] communication"— i.e., the "intended message conveyed by the communication." *Id.* "[R]ecord information" means the "characteristics of the message that is generated in the course of [that] communication." *Id.* In cases involving cookie or pixel-based Section 631(a) claims, courts have held that "record information" includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, ***page visits, purchase intent signals, and add-to-cart actions***." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023) (emphasis added). The Opposition confirms the FAC alleges Meta received only non-actionable record information.

Plaintiffs claim that Meta intercepted the "contents" of Plaintiffs' communications by obtaining automatically generated URLs that "pertain[] to their selections" and "demonstrate[d] that the user is reserving a particular room that fits the criteria that they selected during the booking process." Opp'n at 23. Plaintiffs allege this information contains a "destination," "location," and "room rate," as well as "event data" that merely "shows that the user has completed the checkout process and the reservation is confirmed." *Id.*

This type of information is non-actionable "record information." *See Katz-Lacabe*, 668 F. Supp. 3d at 945 n.9 (noting "page visits, purchase intent signals, and add-to-cart actions" are record

information). Even Plaintiffs' cursory allegations that they "browsed and booked one or more Hilton hotel rooms" fails to plead that Meta received any "contents" of communications. FAC ¶¶ 3, 4. Plaintiffs do not allege that they conducted searches or entered data into form fields that could allow Meta to obtain the "contents" of their communications. *See generally* FAC. The Opposition's reliance on cases finding the "contents" element adequately pled thus falls flat. *See* Opp'n at 22–23 (citing *Brown v. Google LLC*, 685 F. Supp. 3d at 935–936 (search queries considered contents); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (search queries and "full-string URLs" considered contents); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate "content"). Further, the Opposition's reliance on *Revitch v. New Moosejaw, Inc.*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), falls flat. *See* Opp'n at 24. *Revitch* did not address the distinction between "contents" and "record information." *See* 2019 WL 5485330, at *1. That case stands only for the undisputed proposition that online interactions can be "communications."

Instead, the FAC's "contents" allegations are analogous to the plaintiffs in *Cousin v. Sharp Healthcare*, who "d[id] not provide sufficient factual support to plausibly claim their content was intercepted by Meta as a result of installing Meta Pixel on Sharp's webpage" because they "d[id] not explain what information they provided" on the defendant's website. 681 F. Supp. 3d 1117, 1123, 1130 (S.D. Cal. 2023) (dismissing Section 631(a) claim); *see also Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1038 (S.D. Cal. 2024) (dismissing Section 631(a) claim for failure to allege "contents" and noting that "[c]ases holding that non-text information generated by CIPA plaintiffs constitutes intercepted 'contents' have chiefly focused on 'session replay' technologies, which capture video of the user's entire session," and which are *not* alleged here).

By alleging only "record information" was disclosed to Meta, Plaintiffs fail to allege that

Meta committed a predicate violation of Section 631(a) clause two or three.

C. The FAC Fails to Allege Hilton Holdings Aided and Abetted Unlawful Conduct by Meta in Violation of Clause 4

Even if Plaintiffs alleged the "contents" of their communications were intercepted (and they have not), Plaintiffs still fail to allege Meta intended to commit an unlawful wiretap in violation of Section 631(a) clause four, which was allegedly aided and abetted by Hilton Holdings. Clause four imposes liability on any person "who ***aids***, agrees with, employs, or ***conspires*** with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things" prohibited by clauses one through three. Cal. Penal Code 631(a) (emphasis added).

At threshold, Plaintiffs fail to plausibly allege Meta obtained *any* communications "without consent" or in an "unauthorized manner." *Id.* Plaintiffs consented to the alleged disclosures through the Hilton and Meta Agreements. *See* Sections I.A, I.B, *supra*; *see also* Mot. at 11–12 (citing *Silver*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021)). This defeats their Section 631(a) claim, because Meta did not commit an underlying violation of clauses one through three that Hilton Holdings could aid and abet. *See Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (affirming dismissal of CIPA claims because plaintiffs consented through Facebook's terms and policies). The Court's analysis should end here.

Plaintiffs also mistakenly argue they do not need to plead Meta's intent to violate clause four. *See* Opp'n at 17–18. Section 631(a) is a criminal statute, codified within the California Penal Code. *See* Cal. Penal Code § 631(a). Under California law, a violation of a criminal law requires a plaintiff to plead intent. *See* Cal. Penal Code § 20 (every crime requires "act and intent"); *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) ("In the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition [of aiding and abetting] applies."). This is true regardless of whether the criminal statute

is applied for criminal or civil liability. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483–85 (2023) (concluding the common law tradition supplies the proper legal framework for civil aiding and abetting liability where a federal statute imposes civil liability upon a person who aids and abets but does not define the term aids and abets).

Whether phrased as aiding, abetting, or conspiring, Plaintiffs must allege Meta intended to violate Section 631(a). *See Smith v. YETI Coolers LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) (noting Section 631(a)'s fourth clause requires "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute"); *People v. Iniguez*, 96 Cal. App. 4th 75, 78 (Cal. Ct. App. 2002) ("Conspiracy is a specific intent crime requiring both an intent to agree or conspire and a further intent to commit the target crime."); *People v. Lee*, 31 Cal. 4th 613, 624 (2003) (for aiding liability to attach, the defendant must give "aid or encouragement with knowledge of the criminal purpose" and "with an intent or purpose either of committing, or of encouraging or facilitating commission of, the crime in question") (cleaned up).

Notably, the Opposition does not even attempt to distinguish *YETI Coolers*. There, plaintiffs alleged YETI knew the third-party software was running on its website and benefitted from using the software, and that the third party independently used the information. *See* 754 F. Supp. 3d at 943. The court nonetheless dismissed the clause four aiding and abetting claim, finding the allegations insufficient "to draw a plausible inference that Defendant knowingly agreed with or employed [the third party] to engage in conduct that violated the wiretapping statute." *Id.* The same result follows here. The FAC at most alleges that Meta makes the Meta Pixel available to website operators, not that Meta intended to receive information purportedly obtained without consent. And, the Opposition agrees that Meta's Business Tools Terms prohibit receipt of information unlawfully obtained. *See* Opp'n at 20. Accordingly, the FAC fails to allege Meta

intended to receive information unlawfully in violation of clause four, and therefore cannot support a claim that Hilton Holdings aided and abetted such conduct. *See YETI Coolers*, 754 F. Supp. 3d at 943; *B.K. v. Desert Care Network.*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (rejecting arguments that Meta "intentionally received and used user data" from the defendants because plaintiffs "d[id] not allege that Meta knew or should have known that the data it received from [d]efendants was collected without users' consent"); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (dismissing CIPA claim because "the complaint and incorporated materials stand for the proposition that Google does not want to receive private health information" and "CIPA liability only extends to willful or intentional conduct").

The Opposition's reliance on Rule 9(b) to argue that "knowledge . . . may be alleged generally" is misplaced. *See* Opp'n at 13. Rule 9(b) concerns "fraud" and "mistake," and Plaintiffs' CIPA claims sound in neither. *See generally* FAC. Regardless, Plaintiffs claim that their allegations "[c]ollectively . . . show a clause four violation," Opp'n at 13, but this does not rise to the level of knowing or substantially assisting Meta ***in engaging in unlawful conduct***. It merely alleges Hilton Holdings placed the Meta Pixel on its website and knew how it operates. It shows nothing of Meta's intent, the critical inquiry here. *See B.K.*, 2024 WL 5338587, at *3.

Likewise, the Opposition's attempts to distinguish *Esparza v. UAG Escondido A1 Inc.*, are unavailing. *See* Opp'n at 13–14. As in *Esparza*, Plaintiffs have failed to allege Hilton Holdings "acted with (1) knowledge that [Meta] intended to violate CIPA and (2) intent to commit, encourage, or facilitate [Meta's] commission of the offense." 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *see also* Mot. at 13 (arguing Plaintiffs failed to demonstrate that Hilton Holdings' knowledge extended beyond simple awareness of the Meta Pixel on the Website). Incorporating the Meta Pixel on the Website does not give rise to liability under clause four. And "even if there

was such a finding [that Meta] unlawfully engaged in wiretapping, that would not speak to [Hilton Holdings'] knowledge." *Id.*

The Opposition relies on three authorities to claim aiding and abetting liability applies here. *See* Opp'n at 10. Each of these authorities is distinguishable. As *Esparza* correctly notes, "[s]ince *Cousin*, other courts have interpreted clause four as an 'aiding and abetting' provision." 2024 WL 3761293, at *2; *see also Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1120–21 (C.D. Cal. 2024) (referring to clause four as "aiding and abetting provision"); *Valenzuela*, 2024 WL 1336959, at *4 (same); *B.K.*, 2024 WL 1343305, at *6 (same). *Esparza* distinguished *Cousin* by noting that "clause four does require that the accused 'aids, agrees with, employs, or conspires with any person or persons to *unlawfully* do, or permit, or cause to be done any of the acts or things' set out in clauses one and two." *Esparza*, 2024 WL 3761293, at *2. "The only way one could 'unlawfully' commit one of those acts is by acting 'intentionally' or 'willfully.'" *Id.*

Here, Hilton Holdings did not intentionally or unlawfully aid or abet Meta's alleged wiretapping violations. It simply allowed the Meta Pixel to function on the Website, as disclosed to users through the Global Privacy Statement. Likewise, *St. Aubin v. Carbon Health* and *Mitchell v. Sonesta Int'l Hotels Corp.* relied on *Cousin*'s erroneous interpretation of liability under the fourth clause, which was in part premised on a lack of case law presented by the defendant. *See St. Aubin*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024) (citing *Cousin*); *Mitchell*, 2024 WL 4471772, at *9 (C.D. Cal. Oct. 4, 2024) (same). Plaintiffs' reliance on *Revitch* is similarly unavailing. *Revitch* never actually analyzed the definition of "aids" or any knowledge requirement, despite Plaintiffs suggesting that the court interpreted the requirement to denote "enabling" (which the opinion mentions merely once). *See id.* at *2. "Enabling" does not appear in the fourth clause.

In short, Plaintiffs' Section 631(a) claim independently fails because the FAC does not

allege Hilton or Meta intended to commit an unlawful wiretap to plead a violation of clause four.

## III. PLAINTIFFS FAIL TO ALLEGE A CONFIDENTIAL COMMUNICATION TO SUPPORT THEIR SECTION 632 EAVESDROPPING CLAIM

Section 632 prohibits "intentionally and *without the consent* of all parties to a *confidential* communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication . . . ." Cal. Penal Code § 632(a) (emphasis added). As set forth above, Plaintiffs' eavesdropping claim under Section 632 fails because they consented to Meta receiving the information at issue here. *See* Sections I.A, I.B, *supra*. Moreover, the Guest Records statute does not apply because Plaintiffs do not allege the disclosure of guest records, and the "third-party service provider" exception applies. *See* Section I.C., *supra*. Accordingly, the Opposition's attempt to argue Plaintiffs' routine internet browsing is somehow confidential due to the Guest Records statute fails. *See* Opp'n at 24–25.

In a final attempt to salvage a CIPA claim, the Opposition throws two alternative arguments against the wall. *See* Opp'n at 26. Neither sticks. First, Plaintiffs argue there is no presumption against confidentiality for internet-based communications. *See id.* Second, Plaintiffs argue Hilton Holdings is somehow contradicting its Global Privacy Statement. *See id.*

Plaintiffs' contention that internet-based communications are presumed to be non-confidential is at odds with their own authority, which holds that "in California, courts have developed a presumption that Internet communications do not reasonably give rise to [a privacy] expectation." *Revitch*, 2019 WL 5485330, at *3 (collecting cases and dismissing section 632 claim with prejudice). While not *every* internet communication is entitled to this presumption, Plaintiffs fail to overcome the presumption for the information they allege was disclosed here.

Plaintiffs' own authority confirms that courts refuse to apply the non-confidential presumption only where health, attorney-client privileged, and financial information was involved.

*See* Opp'n at 25, n.8 (citing *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 799 (health information); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. Nov. 5, 2013) (attorney-client privilege and financial information); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. Mar. 25, 2015) (financial information); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1200 (N.D. Cal. 2024) (tax preparation information)). Courts have distinguished health, financial, and privileged cases for this exact reason. *See, e.g.*, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (dismissing Section 632 claim and distinguishing *In re Meta Pixel Healthcare Litig.* because "that case concerned '[c]ommunications made in the context of a patient-medical provider relationship,' which is a 'readily distinguishable' relationship from that of a Home Depot customer conversing with a customer service agent."). The Court should reach the same result here.

Plaintiffs' attempt to argue their interactions with the Website were confidential because Hilton Holdings is somehow contradicting its Global Privacy Statement regarding non-disclosure of "room preferences" and "arrival times" to third parties. *See* Opp'n at 26. This contention fails for the reasons set forth in Section I.A. The Global Privacy Statement discloses the use of technologies like the Meta Pixel to share information regarding interactions with the Website. *See* RJN, Ex. C at 24. The Court should dismiss Plaintiffs' Section 632 claim on this basis, too.

## IV. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED EQUITABLE RELIEF

The Opposition conflates an ability to plead alternative theories of relief with the assertion that Plaintiffs could do so here. *First*, the Opposition overlooks a swath of recent cases rejecting Plaintiffs' contention that they can plead alternatively plead equitable remedies when an adequate legal remedy is available. *Second*, Plaintiffs still fail to allege they lack an adequate remedy at law.

Plaintiffs claim that Hilton Holdings "misapplie[d]" the Ninth Circuit's decision in *Sonner*

*v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (2020).[3] Opp'n at 28. They argue "[n]othing in *Sonner* prohibits Plaintiffs from *pleading* equitable relief in the alternative." *Id.* Plaintiff's position "has been explicitly rejected by numerous courts post-*Sonner*." *Smith v. United Seating & Mobility L.L.C.*, 2024 WL 4441082, at *6 (C.D. Cal. Sept. 11, 2024) (citations omitted); *see also Bride v. Snap Inc.*, 2025 WL 819567, at *9 (C.D. Cal. Feb. 21, 2025) (same); *Avdi v. State Farm Gen. Ins. Co.*, 2024 WL 5424416, at *5 n.4 (C.D. Cal. Nov. 27, 2024) (same).

Even if such pleading were permitted, "that does not relieve Plaintiff[s] of the obligation to satisfy the minimum pleading requirements for each claim for relief, including any alternative forms of relief. To pursue equitable relief claims, Plaintiff[s] w[ere] required to plausibly allege that [they] lack[] an adequate remedy at law." *Obillo v. i-Health Inc.*, 2025 WL 844389, at *4 (N.D. Cal. Mar. 18, 2025) (noting "[a]lternative pleading is not a substitute for inadequate pleading"). Plaintiffs' own authority confirms as much. *See Edleson v. Travel Insured Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021) ("[A] plaintiff may seek equitable relief for past harm only if he has no adequate remedy at law."). Here, the FAC makes no allegation that the legal remedies under CIPA are inadequate. *See* FAC ¶¶ 114, 125, Prayer E. These claims arise out of the very same facts and alleged injuries upon which Plaintiffs base their equitable claims. The FAC does not explain—let alone allege—why monetary relief is inadequate.

Plaintiffs cannot save their equitable claims with "a going-forward injunction to stop Hilton's conduct." Opp'n at 28 (citing FAC ¶¶ 3–4). Plaintiffs lack standing to seek this injunctive relief because they are not at risk of future harm. As alleged in the FAC, Plaintiffs are aware that

---

[3] Courts in this district analyze equitable claims similarly to the Ninth Circuit. *See, e.g.*, *Amazon.com, Inc. v. WDC Holdings LLC*, 2023 WL 2815140, at *17 (E.D. Va. Apr. 6, 2023) (Alston, J.) ("Under Virginia law, equitable remedies are not available if a plaintiff has an adequate remedy at law.") (citation omitted).

the Meta Pixel operates on the Website and therefore cannot allege that an injury will result from future visits. *See In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 366 (E.D. Pa. 2023) ("Website Users brought this lawsuit and are presumably now aware of the alleged risks associated with browsing Cabela's and Bass's websites. Website Users' activity . . . is entirely voluntary and we assume Website Users will act rationally in light of the information they possess.") (footnote omitted).

Plaintiffs' argument that that "they cannot presently [book Hilton rooms] without Hilton unlawfully disclosing their room identities and room reservation details" is unavailing. Opp'n at 28. Plaintiffs ignore myriad other ways they can book a stay at a Hilton property or use their Hilton Honors points, such as over the phone, in person, or through third-party websites. The Court should dismiss Plaintiffs' claims for equitable relief.

## V. PLAINTIFFS LACK STATUTORY STANDING TO BRING A UCL CLAIM

Plaintiffs' UCL claim alleges they cannot use Hilton Honors points to make reservations on the Website and that they suffered "a loss of personal information." Opp'n at 29. Neither purported harm confers UCL statutory standing here.

Plaintiffs' supposed inability to use their Hilton Honors points toward "future Hilton hotel room reservations" (*id.*) is specious for multiple reasons. First, Plaintiffs claim this is "an economic injury that gives rise to standing" (*id.*) but fail to explain why and offer no case law either. Second, in any event, Plaintiffs have failed to allege they experienced an economic injury. Even if Plaintiffs ***chose*** not to redeem points on the Website, there are other ways to book Hilton hotel rooms or to use Hilton Honors points that do not involve the Website. Plaintiffs have not alleged that they are entirely foreclosed from making Hilton reservations with their Hilton Honors points. There is accordingly no "future property interest diminished." *Id.* (citing *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019). This alleged harm does not confer statutory standing.

Plaintiffs also claim they "suffered a loss of personal information" that allegedly has "cash value." Opp'n at 29. This, too, fails because Plaintiffs do not allege the loss of their personal information constitutes "economic injury." Plaintiffs fail to allege that they ever participated, or intended to participate, in a market for their personal information. *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977–78 (C.D. Cal. 2023) (finding no economic injury for alleged loss of private data and the diminution of its value because plaintiff failed to allege specific facts showing that she could have sold the limited data collected, ever attempted or intended to sell her data, or that collection, without more, impeded her ability to sell it.). Accordingly, Plaintiffs lack standing to bring their UCL claim. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property.").

Plaintiffs' reliance on *Cappello v. Walmart Inc.* and *Calhoun v. Google LLC* is also misplaced. In *Cappello*, the court held the plaintiffs failed to establish injury under the UCL because they "did not establish the shared personal information—namely ***their*** video purchase history—had economic value." 94 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019) (emphasis added). In *Calhoun*, the court relied exclusively on data breach cases—a factually distinct context—to reach its conclusion. Even recent data breach authority supports Hilton Holdings' position that "loss of value in personal information" does not confer UCL standing. *See Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1323 (N.D. Ga. 2024) (dismissing UCL claim because "[a] plaintiff's personal information does not constitute property under the UCL") (citations omitted).

## VI. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS BARRED

The Opposition does not alter the fact that valid contracts still preclude Plaintiffs' unjust enrichment claim. Plaintiffs contend that because they "have not asserted a breach of contract

claim," they may bring an unjust enrichment claim in the alternative. *See* Opp'n at 30. Not so.

The "condition precedent to the assertion of [an unjust enrichment] claim is that no express contract exists between the parties." *Colonna's Shipyard, Inc. v. Coastal Cement Corp.*, 2023 WL 3321734, at *3 (E.D. Va. May 9, 2023); *see also Brainchild Surgical Devices, LLC v. CPA Glob. Ltd.*, 2022 WL 992734, at *4 (E.D. Va. Mar. 31, 2022) (Alston, J.) ("[T]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment.") (citation omitted). Though Plaintiffs claim they "contest the existence of a valid and enforceable contract with either Meta or Hilton," (Opp'n at 30), their Opposition does not actually challenge this point. Plaintiffs do not dispute that they are Hilton Honors members and Facebook users or that they consented to the Hilton and Meta Agreements, which, in the aggregate, cover the same subject data collection, use, and sharing matters as Plaintiffs' unjust enrichment claim. Although Plaintiffs challenge *Hilton Holdings'* ability to enforce certain Meta agreements (*id.* at 7), they do not challenge the validity or enforceability of the agreements themselves, or Plaintiffs' consent to those agreements. Therefore, these agreements foreclose Plaintiffs' duplicative unjust enrichment claim. The Court should dismiss the claim on this basis, too.

## CONCLUSION

Hilton Holdings respectfully requests that this Court dismiss the First Amended Complaint in its entirety with prejudice.

Respectfully submitted,

Date: May 2, 2025

*/s/ Olivia Houston*

Olivia Houston (VSB #95824)
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4253
olivia.houston@us.dlapiper.com

Isabelle Ord (*pro hac vice*)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
(714) 878-9849
isabelle.ord@us.dlapiper.com

Oliver M. Kiefer (*pro hac vice*)
Ashley L. Barton (*pro hac vice*)
Matthew C. Danaher (*pro hac vice*)
DLA Piper LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92101
(619) 699-2781
oliver.kiefer@us.dlapiper.com
ashley.barton@us.dlapiper.com
matt.danaher@us.dlapiper.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 2nd day of May, 2025, a true and correct copy of the foregoing document has been duly served on the following individuals through the court's electronic filing system:

Jonathan Monroe Petty
Phelan Petty PLC
3315 West Broad Street
Richmond, VA 23230
(804) 980-7100
Jpetty@phelanpetty.com

Christopher Poole Yakubisin
ATTORNEY TO BE NOTICED
Phelan Petty
3315 West Broad Street
Richmond, VA 23230
(804) 767-6316
Cyakubisin@phelanpetty.com

Eric S. Dwoskin
Dwoskin Wasdin LLP
433 Plaza Real, Ste. 275
Boca Raton, Florida 33432
(561) 849-8060
Edwoskin@dwowas.com

*Counsel for Plaintiffs*

/s/ *Olivia Houston*
Olivia Houston